Judge Marshall
delivered the Opinion of the Court.
This ejectment was brought by Rachel Shackleford, to recover land in the possession of Miller and Ross, claim:, ing under deeds from William Barnett, to whom it had been conveyed by Bennett C. Shackleford, deceased, late husband of the plaintiff, by the same deed which was before this Court in the cases of Barnett vs. Shackleford, (6 J. J. Marsh. 532) and Miller vs. Shackleford, (3 Dana, 289,) and which, in those cases, was determined to bo void as to Mrs. Shackleford, unless redelivered after Shackleford’s death.
Special verdict &c.
^ nmícíf' foTa change of venue, ved; the change the°cause translated to ¶™11*131 a motion is made, behalf of the def’tsandshenft, for leave to a-«end theretam, so as to certity a service upon^wi f^ntLmotion denied, and that edt^'lt'was'not competent, it coinuo alter the records °r evidences of the action of another tribun®b which granted the change of venue. 4b error>in da" hiding upon such a motion, when na WT06 111 the decision ou the merits of the attributeT'to it* would not be fersai? fór & r°" It is not a matter ficerStoEmenda return he has once duly made. A motion to permit such a proceeding, is addressed to th e sound discretion of the court—which must be exercised with a special view to the preservation of the faith ami .authority of judicial proceedings; never where injustice may be caused by the amendment.
In the present case, judgment was rendered for the 'plaintiff on a special verdict. And the defendants, haying failed in their motions in arrest 'of judgment, and for a new trial, have appealed to this Court. By their as-, . r N, .. . . - signment oi errors, they question numerous opinions of the Court rendered against them, in various stages .of 'the cause from its commencement to the final judgment! Of these, such as seem to require notice in this opinion, will he stated and disposed of in their order.
The suit was commenced in the Madison Circuit Court, and was afterwards, by ordter of á Judge, on the petition of the plaintiff, and on notice returned duly executéd upon the defendants, removed to the Fayette Circuit, At the first term of the Fayette Circuit Court after the •removal of the cause, a motion was made in that Court, on behalf of the defendants and the sheriff of Madison, who had made the return on the notice, that the sheriff . . ’ should be permitted to amend his return, so as to state ihatit had not been served on all the defendants: which was alleged to be the truth of the case- And it was avowed that the object of the motion to amend was to lay the foundation of a motion, which was to follow the amendment, to remand the case to Madison, on account of the defective service of the notice. But the Court refused to allow the amendment, and the motion tb remand was not made. This refusal presents the first question.
. iii . . . , Ihe motion as made had no connection with the merits of the cause; it was not based upon any evidence or .... .. ," .. 1 suggestion oi injustice or injury, actual or anticipated, and it did not, in fact, make the question of jurisdiction* ,, . ,, . , , ,, . . ,J It is rather founded on the concession that the Court had jurisdiction of the principal case. And even if this A . 111 . . . , . _ Court should be of opinion, that the Circut Court erred in overruling the motion, it is difficult to perceive how or why that error, having ño connection with the merits of the case, and having no immediate or definable bearing on the question of jurisdiction, should produce a reversal of the final judgment. We cannot, however, *266 come to the' conclusion that the Court erred in the opinjon un(jer consideration.
In the first place, we entertain great doubts whether the Fayette, or any other Circuit Court, had power to authorize the proposed amendment, and thus to alter and make inconsistent with itself, the record of the change of venue. The proceeding for a change of venue was completed, the record of the proceeding was also complete, and the tribunal before which it had taken place was funclus officio. The record of the change of venue came into the Fayette Court, not for the purpose of any further proceeding in the change of venue, but as evidence that the venue had been changed; and we are inclined to the opinion that, the jurisdiction of that Court was tobe determined conclusively by the evidence as it then existed, and that it had no power by altering the evidence to destroy the jurisdiction once vested.
But if the power to authorize the amendment be conceded, it must also be conceded that, its exercise is a matter of sound discretion to be determined by the nature and effect of the proposed amendment. It cannot be admitted, as contended for, that a returning officer has, at any time before or after judgment, or other complete determination of a judicial proceeding, a right to amend his, return on the initiatory process, so as to accord with what he may then state to be the truth of the case. This would be to place at his discretion the verity and consistency of records, and the effect and authority of the most solemn judgments. Of these the Court is the peculiar guardian, and its power of permitting amendments should be exercised with an especial view to the preservation of that faith and authority which ought to belong to all judicial proceedings.
In the present case, the proposed amendment would have contradicted the original return; it would have produced inconsistency in the record, and would have deprived a complete judicial act, apparently regular and correct, of that support which the record previously gave it,’ and which was essential to its validity. There could have been no abuse of discretion in refusing to permit such an amendment, when there is not even a sug *267 gestión, that it was essential to the attainment of justice, or to the advancement of any interest of the party; and when the delay and trouble which it would have caused would probably have resulted at last in placing the case where it was when the motion was made.
Plaintiff in eject, may (with leave) amend his dec’a by changing the date of the demise.
An averment that the ouster was after the commencement of the term, ia sufficient. The date of the ouster, laid under a viz. if incorrect, may be regarded as surplusage,
An error in ad-■pr°P®r beS rendered Tm^ ™6nceforceo» ther party, establishing the fact which the improper evidence was intended to prove.
The next question to be considered, grows out of the permission given to the plaintiff, before the trial, to amend the declaration, by changing the date of the demise from the 4th day of July, 1823, to the 4th day of July, 1824. This amendment may have been material, and in fact necessary for a fair trial of the plaintiff’s title in this suit; as the death of her husband, B. C. Shackleford, previous to which she had no right to make the demise, may not have occurred (as will appear from the special verdict,) until after the date of the demise as first laid. If it wras material, it is sanctioned by the opinion of this Court, in the case of Rogers vs. Barnett, 4 Bibb, 481, and seems to be authorized by the statute of 1811, 1 Slat. Law, 340. If it was immaterial, the appellants could not have been injured by it, and have no right to complain of it.
It is contended, however, that if the amendment was allowable, it does not go far enough; as the ouster, originally alleged to have been in 1833, stands unchanged, and therefore appears to have been committed before the date of the demise. But the particular date of the ouster need not be stated; it is sufficient if it appear to be after the commencement of the term. (Cro. James, 312. Run, on Eject. 216.) And as the declaration states, that the ouster was after the demise, and after the plaintiff en* teredand was possessed of his term, the particular date, laid under a videlicit, being repugnant to what.goes before, is void and may be rejected as surplussage. Cotton vs. Ward, 3 Mon. 310; Cro. James, 98, 428; Run. on Eject. 218-19. The declaration is, therefore, substantially sufficient to authorize a judgment for the plaintiff.
Several questions of evidence were made on the trial, and it is contended that, the Court erred in permitting a witness for the plaintiff, in making proof of boundary, to detail what another person, then dead, had told him *268 in relation to one of the corners of the plaintiff’s patent* The propriety of admitting this evidence is at least very questionable. But as the boundary claimed by the plaintiff, and found by the jury, was conclusively proved, so far as it was involved in this case, by the production on the part of the. defendants, of the deeds under which they claimed, and which are set forth in the verdict, the opinion, complained of became entirely immaterial; and whether erroneous or not, forms no sufficient ground of reversal. Craddock vs. Craddock, 3 Mon. 78-9; Hamilton vs. Rucker, 3 Dana, 41. The. other opinions of the Court on the subject of evidence, were, either obviously correct, or entirely harmless, and that which was the most important seems to have been disregarded by the jury-
Instructions, &c.
The special ^or^li'ch 1
A great number of instructions were asked for by each party, and many were given by the Court; but as, with one exception to be hereafter noticed, the facts to which they were intended to apply are. found at large in the verdict, the material questions of law presented by the instructions, will arise more properly in the discussion of the verdict: to the consideration of which we shall now proceed.
The jury found by their verdict, that a patent issued to Rachel Bell, on the 4th of May, 1808,granting a tract of land, the boundaries of which are designated by reference to a plat annexed; that Rachel Beil intermarried vvith Bennett C. Shackleford before the 7th day of May, 1811, on which day, they find that said Shackleford covenanted to sell, and, in forty days, convey the whole of the land included in the patent to William Barnett, and that his wife should join in the conveyance. They find “that on the 18th day of June, 1811, by paper marked Í), and made a part of the verdict, said Shackleford and wife conveyed to said Barnett, the whole of the land contained in the patent;” that Shackleford died in the spring of 1822, 1823, or 1824, leaving his wife still living; that William Barnett, by deed bearing date 3d of July, 1820, conveyed to James Barnett, three hundred and eighty acres, part of 'the land granted to the plaintiff, and included in the deed of Shackleford and wife to *269 said Barnett, and that Alexander Miller (one of the defendants) entered on the land included in the deed from William to James Barnett, under the title of said James, and was in possession thereof when the declaration was Served in this case.
They further find, that the plaintiff and her husband, Shackleford, did execute and acknowledge the deed to William Barnett, and intended thereby fully to convey their whole interest in the land; that in virtue thereof, Barnett paid the purchase money, and took possession of the land, and held it until the death of Shackleford. After which, and before this suit was brought, the plaintiff declared, in the presence of Joseph Miller, that she and her husband had sold the land to Barnett, and had spent the money, but that she held the deed sacred, and had confirmed it, but she thought she was entitled to the surplus or compensation for it; and that she did, in the presence of John Gilbert, declare that she had no right, title or claim to the eight hundred acres of land, except as to the surplus. “But the jury say, they do not find that the said declarations were ever conveyed to said; William Barnett or his assigns, and they Relieve they were made by the plaintiff, under the impression that the deed was a good one, and that she was only entitled to the surplus, and that all her expressions were in refers, ence to the deed made by Shackleford and wife.”
They find that, after the death of Shackleford, the plaintiff did permit the said Barnett and his assignees to. remain in peaceable possession of the land for a number, of years, and that she never entered on the land claiming to be possessed, nor made any demand thereof until the demand made by Robertson, on the 17th of June, 1828, as proved by A. Miller’s letter, marked F.
The jury further find that, on the 28thday of August, 1827, William Barnett and wife conveyed to Pleasant Atkinson, one hundred and forty-five acres of land, part of the eight hundred acres granted to Bell, and also part of one thousand and ninety acres granted to L. Bacon, 'and that on the — day of August, 1827, said Atkinson and wife conveyed to Samuel Ross (one of the defen-, dants) fifty-one and one fourth acres of the land so con-. *270 veyed to him, and being a part of Bell’s land, as per pa* tent. And that Atkinson and his alienee were in possession at and before the commencement of the suit.
The facts in a special verdict, are to be found by the jury, upon theirown convictions, and on their responsibility ; the form of the veidict, and its sufficiency as tothefactsfound, must be looked to by the court. It is no objection to a special verdict, that it was drawn up by counsel in the cause—in order to show what facts must be inserted (if found true,) and the proper form of ptating them— the rights and duties of the jury, the effect of their verdict— general pr special, the ponsequence of emitting particular facts &c. bejng fully explained to them, by the couit.
The several deeds and other papers referred to in the verdict, are expressly made part thereof; and, upon the whole matter, the jury ask the advice of the Court, &c.
It was not until the jury had presented several verdicts, obviously incomplete, and not covering the whole case submitted to them, and which were rejected by the Court, as insufficient, that the finding which has been substantially stated, was offered and received as a sufficient verdict. And objections have been taken to the supposed improper agency of the Court, and of the counsel by permission of the Court, in producing the verdict as it was ultimately rendered. It seems that the counsel on each side was permitted to present the draft of a -verdict, which, after being inspected by the Court, was submitted to the jury; who were carefully informed of their right to find a general verdict if they could agree; of their duty to find no fact, but upon their own conviction; of the object and intent-of a special verdict, and of the necessity that it should present such facts as would enable the Court to pronounce a judgment for one or the other party; and upon their offering the final verdict, they were informed, before it was received, that if there was a man upon the jury who believed that the deed from Shackleford &c. had been re-delivered by the plaintiff, after the death of her husband, he ought not to agree to the verdict; because, in the opinion of the Court,it did not find a retdelivery; and they had been previously informed, that a re^delivery could not be'inferred by the Court. To all this proceeding, except so much as was said in relation to the re-delivery of the deed, the defen. dants objected.
Upon looking into the authorities -on the subject of making up a special verdict, we are satisfied that there was not in this instance, any excess of authority, or any undue interference, on the part of the Court. And that if there was any the slightest departure from that caution which should be observed towards a jury while they ^re fcrrrfing their opinion as to the facts, it is to be found *271 rather in the earnestness with which their attention was called to the necessity of finding a re-delivery, if they believed it had taken place, than in any other part of the directions or conduct of the Court. Of this the appel- , , , . . rr, lants cannot, and do not, complain; nor are we to be understood as intimating that the other party had any right to object to it.
In considering a verdict, the true °o íe 3°ngh>it j3 not with tha strictness applicable to pleadings, but liberally, and with a view that it shall stand,rather than fall.
*271 According to the English practice—“The minutes of a special verdict intended to be found, ought to be signed by one of the counsel for each party, and should be approved by the Judge; it being his province to take care that the question of law be fairly stated'; and they ought to be delivered to the jury before they find the verdict. If all the counsel of one party refuse to sign the minutes, the judge may direct the jury to find a verdict from the minutes as signed by the counsel of the other party. 7 Bac. Abr. pa. 5, title Verdict, let. D. And if the verdict be'defective, so that the Court cannot give judgment thereon, they will amend it if possible, by the notes of the counsel, or the memory of the judge who tried the cause. 7 Bac. Abr. ubi. sup. Tidd's Practice, 807, 661.” Or by the notes of the clerk of assize. 3 Salk. 47-8.
Making all due allowance for the difference in the practice and organization of the Courts in this country and in England, we think these references fully justify the course pursued in the preparation of this verdict. A jury is not expected to be able (especially in a complicated case) to draw up a special verdict without assistance. The facts are to be found upon their own convictions and responsibility; the form of the finding, and -its sufficiency as to the extent of the facts embraced, must be looked to by the Court. And except as to these ■last points, the verdict in this case appears to have been uninfluenced by any interposition or agency of the Court, or the counsel, during the process of its formation.
In considering the verdict itself, with a view to its sufficiency, the first object is to ascertain what the jury intended to find; and this is to be done by construing the verdict liberally, with the sole view of ascertaining the meaning of the jury, and not under the technical *272 rules of construction which are applicablé to pleadingsa If the meaning of the jury can be ascertained, “and a verdict on the point in issue can be made out, the Court will mould it into form and make it serve.” 2 Burrow's Rep. 699, 700; 1 Bibb, 251 and 257; 2 Bibb, 178 and 429, &c. &c. According to the nature of the thing', this rule must be considered as applicable to special as well as to general verdicts; and certainly there is no ground for excepting a special verdict from the rule, thát it shall be construed with a view that it shall rather stand than fall.
The main question was, whether a woman had, after the death of her husband,redelivered a deed, which she had signed and sealed, with him, in his life time, but which was invalid as to her, for want of a sufficient certificate of acknowledgment. The jury made the deed part of a special verdict, & found, specifically, all that she did aitd said about it, after her husband’s death, & among other things, that she,together with her husband, did convey the land by that deed. It was contended that this was a finding that she had parted with her title: but held, that it implies no more than that the deed, as it is, was executed by her, when it was made.
In the present verdict, there is but a single point on which there is a difference of opinion as to the intent of the finding, and that relates to the deed from Shackle-ford and wife to Barnett. It is contended by the appellants that, by the language used on that subject, the jury find as a fact, that the plaintiff together with her husband did convey the land by that deed; and that consequently, the verdict shows that she has parted with her title, and has no right to recover. And on this ground, they ask, not only a reversal of the judgment against them, but that a judgment be rendered on the verdict in their favor. It is insisted, on the other hand, that the jury meant to find nothing more, at all events, than a conveyance of the title during the life of Shackleford; and further, that having found the deed itself, its effect is a matter of law, to be decided by the Court, and which the jury had no right to decide.
If we were to construe the single word of the verdict now under consideration, without reference to any thing else, we might be constrained to adopt the conclusion, that, however inconsistent the opinion of the jury might be with the actual operation and effect of the deed, they probably intended to assert, that the fee simple title of the plaintiff actually did pass thereby. But looking as we are bound to do, to other parts of the finding, there is on the face of the verdict, and in the fact itself that a special verdict of such length and complicacy was resorted to, enough to convince us that, the jury did not intend to make any such assertion. If the jury were able to agree, and willing to' find in their *273 Verdict, that the plaintiff had transferred her title to the defendants, or those under whom they held, what obstacle was there to a general verdict for the defendants? There is scarcely a special fact inserted in the verdict, the insertion of which is not inconsistent with the idea that the jury believed, and meant to be understood as finding, that the plaintiff had, by the original exeeutioñ of the deed, parted with her entire title. Why were the expressions of the plaintiff with regard to the sa■credness of the deed and her having confirmed it, stated in the verdict? Why was her acquiescence in the occu^ pation of the land after her husband's death, specially found? or how could she be said to permit such occupa^ tion if all her right was gone? If the plaintiff had no title, these facts eould not have been understood as hawing the effect of giving her a title, nor of raising any question in her favor. They were, on the contrary, obviously intended to raise questions against her title, which would have been useless and absurd, if the jury be supposed to have already found, in positive terms, that she had actually granted the land in fee.
Upon the whole verdict, therefore, it is obvious that the jury did not intend to find, nor to be understood as finding, the fact that the plaintiff had divested herself of her entire title; and if the whole matter depended upon their intention, wo could not, on this point, give judgment in favor of the appellants, upon the verdict. If We go beyond the face of the verdict itself, we find in other parts of the record ample confirmation of the conclusion at which we have arrived with regard to the intention of the jury; and certain evidence that they must have understood that, the original validity and operation ■of the deed was not in question, but that its original invalidity as the deed of Mrs. Shackleford, and the necessity of a re-delivery, after her husband’s death, to make it effectual to pass her title, were conceded. It is moreover, perfectly certain from the conduct of the Court and the parties, that when the verdict was rendered, it was not understood to be a finding of the fact as now contended. We may add further that, as according to the principles decided in the two cases upon the same *274 deed, already referred to (6 J. J. M. 532, and 3 Dana, 289,) no proof of the intention with which the deed was originally executed, or of mistake or fraud in the authentication of it, could have made it, or proved it to be, the deed of Mrs. Shackleford from the beginning, the jury could not, b}' any supposable state of the evidence, have been justified in finding that she had, by the original ex* ecution of that deed, conveyed her fee simple title. And therefore, their finding ought not to be so understood, if it will admit of any other reasonable construction*
•The construction and effect of a deed, are matters of law; and if a jury undertake to find what effect a deed has —as, that the grantor did convey the land by the deed— the court will disregard the finding, thus far, and give the deed its proper effect, or no effect, according to the facts-The jury may find a general verdict upon the facts and law, or may find a verdict special, as to all the facts, or only as to some particular facts, which they may find, and submit to the court, to apply the law. But so far as they find facts specially, their opinion of the effect is immaterial: the court will, nevertheless, pronounce the law arising upon the facts, according to its own judgment.
*274 From all these considerations, we are of opinion, the verdict is not to be understood as contended for by the appellants; and that in all probability the" jury used the word ‘convey’ merely as descriptive of the general purport or shape of the deed, without intending to express, what they certainly were not bound to express, any definite opinion as to its effect or operation.
But if we are mistaken in this construction of the verdict, and if the jury are to be understood as asserting by the word -‘convey,’ the effect and substance of the deed; and have undertaken to find that it passed the fee simple title of the plaintiff to the grantee, they have undertaken to find a matter of law', which they had no right to determine* And as to that particular point, their finding ought not to be regarded by .the Court.
“If the jury find a deed specially* they ought to find “ it in luzc verba, and not to find what they judge to be “ the substance of it, that the Court may inspect it, and “ put a construction upon it; but if the deed be lost, it “ is the duty of the jury to find the substance of it, if “ this be proved.” 7 Bac. Abr. title Verdict, letter E. and on the same page, several cases are stated, in which the jury, after finding the fact or facts specially, undertook to draw a conclusion from them not warranted by law; but the conclusion was held void by the Court which will judge for itself of the legal effect of the fact found.
The essential purpose of a special verdict is to present facts upon which the Court may pronounce the law. And although it is within the province of a jury, by finding a general verdict, or a verdict partaking in part *275 of the character of a general and in part of a special verdict, to assume to themselves, and withdraw from the Court, the power of determining the law upon all or any part of the facts, they cannot, merely by expressing their own opinion on a fact stated, withdraw from the Court the decision of the law upon any part of the facts presented in the verdict for the opinion and judgment of the Court.
But they have, in this case, found the deed, or paper purporting to be a deed, and its authentication, and that the plaintiff was a married woman when the paper was executed. These are the facts; the question of law is whether, upon these facts, the title has passed. By the settled law of the land, the deed, upon these facts, is •void and does not pass the plaintiff’s title. And yet, according to the argument of the appellants, because the jury, in stating the facts for the opinion of the Court, have undertaken to pronounce their own opinion as to the law, the Court is not only precluded by that opinion, from pronouncing the true judgment of law upon the facts found, but is compelled to adopt the opinion of the jury, however erroneous it may be. This seems manifestly unreasonable. If the jury have expressed the opinion imputed to them, they have not been willing to rest any part of their verdict upon it; but, by submitting all the facts to the Court, have submitted to it all the law arising on the facts; and it is upon the facts appearing in the verdict, not upon the legal opinions of the jury, that the judgment on a special verdict is to be based. We have already said that, so far as relates to. this point, the law upon the facts is that the plaintiff was not divested of her title, and this part of the finding presents no obstacle to her recovery.
These views sufficiently meet the suggestion- of the appellants, that if there cannot be a judgment for them on the verdict, there should at least be a venire facias de novo. There is no imperfection in this part of the verdict, and the facts found create no doubt as to the orb ginal invalidity of the deed. They show that, as to the plaintiff, the deed was absolutely void; and they show that the facts on which this conclusion of law is founded, *276 cannot be changed. There is, therefore, as to this point, nothing to supply: no further enquiry to be made. The-legal question as to the validity or invalidity of the deed, is fully presented, and the supposed mistake of the jury upon that question, is absolutely unimportant. It can have no effect.
Where land or slaves have been let by a tenant for life, who diea after the first of March, the lessee or hirer may hold on till the end of the current year, by virtue of a statutet, ;S. L. 668.) But the statute does not apply to the case of a wrongful alienation in fee,, by tenant, for life.
A second ground on which it is contended that judgment should have been rendered for the appellants on, the verdict, is that the deed being effectual to pass the land during the life of B, C, Shackleford, and his death having happened after the first day of March, his alienee was entitled, under the 47th section of the act of 1797, (1 Slat. Law 668) to continue in possession until the end of the current year; and that, as the verdict finds that he died in the spring of 1822, 1823 or 1824, and the demise is dated in July, 1824, it does not appear that the plaintiff had the right of entry at the date of the demise.
In considering the question here presented, Shackle-ford must be taken to have died after the first day of March, and before the first day of June, 1824. And unless the plaintiff had the right of entering upon the land at the date of the demise (on the 4th day of July, 1824,) the verdict, on this point, is for the defendants, and judgment should have been rendered for them. Boyd vs. Barclay, Ante, 227.
But we do not admit that, the defendants, or those under whom they claim, were entitled, under the statute referred to, to remain in possession until the end of the year in which Shackleford died.. The provisions of the statute apply in terms to the case of a person holding lands or slaves by lease or hiring from a tenant for life, and secure the possession to the lessee or hirer until the end of the year, in case the tenant for life should die after the first of March. They were intended to protect persons in possession under the lawful acts of tenants for life, from sustaining injury by the sudden determination of the life estate. They do not apply to the case of the wrongful alienee in fee of the tenant for life. And although it may be as inconvenient for such alienee, as fpr a lessee or hirer, to find another farm, or another la *277 borer, after the business of the year is fully under way; yet the legislature has not thought proper to encourage such wrongful alienations by extending to the alienee the same protection. And we find no ground in reason, or the general principles of the law, for extending the protection to him by construction.
Where tenant per autre vie had sowed the land, and cestui que vie died before the crop was gathered, the ten ant was entitled iat coin, law) to the emblements, and the right of ingress & egress to take them; but the reversioner’s right of entry was notsuspended in the mean time; nor were any rights accorded to him to whom the tenant had aliened in fee; he was, at best, a tenant by sufferance, and might be entered «pon atany time, Husband’s alien,-.' ation of wife’s es tate, shall notpre jirdice her right! on his death, she may enter according to tier right. (S. L. 5S2.,— This does not ap ply to a lease for years; there the lessee might (su pra) hold to the end of the year. But to an aliena, tion in fee, it applies; there thealienee has no pro tection against the widow’s immediate entry.
It is true that, by the common law, if the tenant per autre vie sowed the land, and the cestui que vie died before the crop was gathered, the tenant was entitled to the emblements. But we do not understand that this right to the emblements excluded the reversioner from his entry upon the land, and especially from those parts of it on which there were no emblements. The tenants right in such cases, is rather the right of ingress ^nd egress, and not the right of continuing in possession of the whole farm till the end of the year. Keech vs. Hall, Doug. But we apprehend that even this right was never, under the common law, accorded to the, alienee in fee of a tenant for life. The reversioner could enter upon him at any time. While the reversioner abstained from exercising his right, he was, at most, a mere tenant at sufferance, and the possession was never s.e: cured to him by the law.
By the statute of 1798 (1 Slat. Law, 582,) it is provided that, the husband’s alienation of the wife’s estate during the coverture, shall not prejudice her right, but that on his death, she may lawfully enter thereon, according to her title. A lease for years is not such an alienation as is here referred to, but a conveyance in fee js; and, as heretofore decided, in the case of Miller vs. Shackleford, (3 Dana, 291,) such a conveyance presents no obstacle to the entry of the wife immediately upon the death of her husband. The possession during the year might be secured to his lessee, by the statute of 1797, relied on in this case, he paying the rent to the wife, as provided for by that statute, for the intervening period. But in case of the alienee, there is no rent accruing, and the statute (of 1797) does not intend to create a new rent, or any new contract, nor to afford any protection to the alienee, but only to make a lease by the tenant for life binding on the reversioner until the end *278 of the year, and to secure the rent to the reversioner during that time.
A woman whose estate^has been ed by her husband, may maintain her action to recover it, after out showin^-uiy notice, to the ten acquiescence ^in the tenant’s hoiyearaf'it'seem^ would bar her, sh^was ignorant of her right.
A lessee holding pyer, by^permislord,° becomes tenant from year to year, and is entitled to reason tore he° shall ^be expelled. But only wherqthere is some contract, pHed?5 between the landlord and wherethetenant
A third question arising on the verdict, is as to the e®3ct °f ^ continued occupancy of the land, "Which the jury find was permitted by the plaintiff, for several years after her husband’s death. It is manifest from the whole finding on the subject, that no other permission ;s f-0 be understood than mere acquiescence on the part . . 1 ‘ oí the plamtiti, or an abstinence from any demand of the P0ssessi011, The idea of any contract or consent communicated from her to the defendants, is not only not to Imphed5 but is excluded by the general tenor of the fqcts found to have occurred after Shackleford’s death: and the question is whether, by thus permitting the defendants to occupy, her right of entry, which ac-> crued on the death of Shackleford, was suspended, so as to require a demand of the possession, or a notice to quit, before she could enter or maintain her action of ejectment.
It was decided in the case of Miller vs. Shackleford, (before referred to,) that, whether the alienee of the husband be considered as tenant by sufferance of the wife or otherwise, notice or demand was not necessary to entitle her to her action; and we do not perceive on what principle the mere failure to sue, or make other, demand of the possession, for any period short of twenty years, and particularly when, as in the present case, she remained ignorant of her rights, should have the effect of subjecting her to any such condition or necessity. Where the owner of lands has leased them to an individual, and permits the lessee to occupy for some time after the term has expired, the Courts have very properly inclined to the implication that the narties have renewed • 1 . , . . * „ the contract xo.r an indefinite period, or from year to year> and require reasonable notice before the tenant shall be expelled. But this rule is never applicable un^ess ^ie tenapt holds under the owner, by some contract, express or implied. It is certainly not applicable to a case where the tenant claims the fee to be in himself, in the present case, there is no express contract, and no ground for implying one. The facts found do not con *279 stitute the relation of landlord and tenant, and the jury has not found that it exists; so far from it, the deeds exhibited by the defendants, as well as other features of their defence, show that they claim the fee. And if notice should be deemed requisite in such a case as this, it might, with equal reason, be required in every case in which a person having the right of entry should abstain from suit ordemand, and thus permit the persons in possession to continue their occupancy for five or six years undisturbed.
No declaration, or disclaimer of right, by one pai ty, can give to another to whom it was not made, and who could not have acted on it—any right, nor impose any obligation on the party making it
A verdict, geheral or special, is sufficient when it responds to the whole case, and will enable the court to render judg’t, for one party or the other. It is not essential that every fact attempted to be proved,should be affirmed, or negatived, when a special verdict is found.
A jury may decide a case, with a reservation of a single question upon part of the facts, which they may submit to the court, for the judg’t of the law, for one or the other party, upon those facts.
*279 The case, as to this point, is not essentially altered by bringing into view the declaration of the plaintiff, made to Joseph Miller and John Gilbert. Having never been communicated to the defendants, or those under whom they claim, those declarations could not have formed the inducement to any act on their part, nor constituted the basis of any right. And as they were made by the plaintiff in ignorance of her rights, they imposed no obligation upon her. They do not, either separately or in connection with the acquiescence of the plaintiff in the possession of the defendants, constitute facts from which the law will imply such a relation between the parties as requires notice or demand before the action can be maintained.
But these declarations are relied on principally as facts conducing to prove a re-delivery of the deed; and this brings us to the last objection taken to the sufficiency of the verdict. It is not contended, that the declarations of the plaintiff, as stated in the verdict, constitute a re-delivery of the deed, or are equivalent to it; or that, on these declarations, as stated by the jury, the judgment of law is that the plaintiff has in any manner parted with her title. But it is insisted, that they conduced to prove a re-delivery; and that the jury ought, in response to this evidence, to have found expressly, either that the deed was, or that it was not, re-delivered; and that because, instead of expressly affirming, or denying, the fact of re-delivery, they state the subordinate facts intended to be evidence of that fact, the verdict is imperfect, and no judgment should be rendered upon it.
It is not conceded that, in making up a special verdict, *280 the jury is bound expressly to affirm or deny every fact which either party may attempt to prove. All that is requisite in a verdict general or special, is that it shall contain such a finding as will enable the Court to pro* nounce judgment upon it, for one or the other party. If, when taken altogether it responds to the whole issue, it is enough. The jury may submit for the opinion of the Court, but a single question arising on a part of the facts of the case; and if they state the facts on which the question arises, and show that their verdict is for one or the other party, as the opinion of the Court may be upon the facts submitted to it, the verdict is good. “Where the jury have no doubts, the Court will have none.” 7 Bacon Ab. pa. 7, tille E.
If thejury intend to submit the law upon' the whole case, they must state all the facts upon which the questions of law depend.
If no conclusion oflaw,in favorof either party, can be drawn from the facts found, the verdict is insufficient.
Where there is enough in n verdict to authorize a judg’t, other facts stated—insufficient, but not incons:stent,may be regarded as surplusageTho’ a material fact might be inferred from others found by the jury, in themselves immaterial—the court can not infer the fact which the jury themselves refus ed, or failed, to jnfer and find. Where it is apparent that the question of Jaw which the jury intended to present, is not raised for want of facts found, the verdict must be deemed immaterial, and a venire de novo must bo awarded; but no such consequence results from unnecessary minuteness:
If, as in the present instance, the jury intend to submit the law arising upon the whole case to the judgment of the Court, they should state all the facts on which the questions of law arise; and it is the duty of the Court to sift out and decide the questions of law. If the facts stated are such as that no conclusion of law, in favor of one or the other party, can be drawn from them, the verdict is-insufficient; but if the verdict states facts from which the issue can be concluded one way, and state other facts which do not affect that conclusion, nor render it doubtful, the insufficient facts are .mere surplusage, and cannot vitiate the verdict. If the jury might possibly have inferred from these insufficient facts, another fact which would be decisive of the case, by failing to state the inference as a part of their finding, they have rejected it, the Court cannot draw the inference, but is bound down to the facts stated, and must pronounce the law upon them.
Where it is apparent that, the jury have not presented one or more facts, so as to raise the question on which they intend to place the result of their verdict, then the finding is imperfect, and there should be a venire facias de novo: unless it should clearly appear that, the question is immaterial. But this imperfection arises from the omission of facts, and not from too minute a statement of them. A verdict may be redundant with minute facts, so as to encumber the record and oppress the Court, *281 but if it present all the facts, it cannot be said to be irresponsive to any part of the evidence, and if it present 'such facts as enable the Court to pronounce judgment on the whole verdict, it cannot be said to be irresponsive to the issues It may be informal, but it is not imperfect, in the sense in which that term is applied to special verdicts,
This case turns upon the question, whether tho pit’fdid, after the death of her husband, re-deliver a certain deed; The jury found, amongotheriacts that, the plaintiff ™^onsr—forS which it might red thatThs^adi re delivered the find that she had! “or that she lmd was’ contended, that the verdict was insufficient; because it failed to respond to that question in. express terms: but held, that the ver diet is sufficient. The fact not found, does not exist.
The true issuo is whether or not _ she had a right" of entry in the land.—The jury having found; that the land descended to her; and having failed to find any fact showing that she was divested of her title or right of entry,—there is enough found to enable the court to declare thejndg’t of the law—which la for the plaintiff.
, . . , . . . r I he real issue m the present, as m other actions oí ejectment, comprises the questions of title or right of . , , F , 1 . ... . r ° t entry m the plamtui, and possession m the defendant, We think the verdict is entirely responsive to these two J .r . * questions. It expressly shows a title or right of entry in the plaintiff, and possession in the defendants; But the defendants attempt to prove, that the plaintiff has divested herself of her title by the delivery, or re-delivery, of a certain deed; after the death of her husband; And the jury, instead of affirming or denying the re-delivery, have stated the facts from which they were desired to infer it. What then? The facts do not amount in law to a re-delivery; and the Court cannot infer it. Nor do the facts stated render it even doubtful, in the minds of the Court, whether there was a re-delivery or not. Were the jury bound to find a re-delivery? That is not contended for. Was it necessary to find that there was no re-delivery, in order to enable the Court to say with certainty that the plaintiff lias not parted with the title, which the jury have found to be in her? When the jury find a title in the plaintiff, must they also find expressly that she has not parted with it, before the Court can know that she still retains it? We are clearly of opinion that in such a case the maxim Kcle non apparentibus, et do non existentibus, eadem est lexf is fully applicable. It is not in general necessary to find a negative, unless when it is proper to show that a person or thing does not come within a particular exception. Willis’ Rep. 117, Mayor of Nottingham vs. Lambert; 1 Wash. Rep. 37, Bunch vs. Alexander.
When the jury find a title once in the plaintiff, and j-,., „ - - , , , . 1 , ; . . tail to find. that she has conveyed it to another, this is equivalent to finding that she has not conveyed it; and such is the necessary and certain implication of law, unless they find other facts which destroy that implica *282 tion. If the facts under consideration had been deemed sufficient by the jury, to authorize the inference of a re-delivery, there is no reason to doubt that they would have found the fact directly. And is it reasonable that, when the jury have not thought them sufficient to justify such an inference, the Court should look to the same inference which they rejected, as the foundation of its own judgment, one way or the other? Or shall facts which the jury deemed insufficient to prove that the plaintiff had re-delivered the deed, be held sufficient by the Court to defeat her recovery, upon the mere possible inference that she might have parted with her title? We again repeat, the facts found in this part of the verdict, do not raise a doubt in our minds as to the title of the plaintiff; they did not in the opinion of the jury, authorize the infei-ence that she had re-delivered the deed; and therefore, upon the whole verdict, we think she ought to have judgment.
WTiere a party is in possession of land, claiming title to the whole tract, he can be' ousted by an entry upon' it, by a claimant who has no ti-fie, so far only as the actual occupancy of the latter (by himself or tenants,) extends.
*282 We have discussed these questions more at large than is usual or perhaps necessary, because they are to a great extent novel in this Court, and have been much insisted on in the argument of the cause. The most important of the positions assumed, on the first and last questions on the verdict, will be illustrated, and as we think supported, by the following cases, in addition to those already referred to. Sharp vs. Sharp, Cro. Eliz, 482; Mornington vs. Try, ib. 111; Allen vs. Hill, ib. 238 and West vs. Monson, ib. 480.
In disposing of the questions arising on the verdict, wo have, without particularly noticing them, sufficiently answered the exceptions to the opinions of the Circuit Court, in giving and withholding instructions, except on one subject, which we will now proceed to consider.
It appears that, as early as 1786, the widow of Samuel Bell (the plaintiff’s father,) was occupying, as her dower, the land, or a part of it, within the survey of Samuel Bell, on which the patent afterwards issued to the plaintiff, in 1808; and that she and her second husband continued to live on it, and to lease out portions of it to others, until about the month of August, 1807, when *283 William Barnett, who afterwards purchased from Shackle-ford, bought out the interest of the doweress, and received from her and her second husband, the possession, which they had held, and which he continued to hold until he purchased from B. C. Shackleford, which was before the death of the dowress.
Plaintiff proved that the entire tract was long held under her title. Defendants proved, that their grantor, claiming under an adverse title, had entered upon and held certain portions of the tract, not including the particular spot in controversy: held, that deft’s evidence did not conduce to prove a possession in their grantor of that particular spot, under his adverse claim; and a general instruction, that they could not avail themselves of that title, was not erroneous.
It appears further, that, in the year 1802, a patent for a thousand acres of land, issued to the heirs of Andrew Hanna, which interferes largely with the survey of Bell and the junior patent of the plaintiff, and that the dowress and her husband were living, and had their possession, within the interference* The evidence conduces, also, to prove that, about the time, and perhaps a little before, Barnett purchased out the dower interest under Bell’s survey, he claimed to own Hanna’s patent, by purchase, (but there is no written evidence of such purchase ;) and there- is some evidence conducing to show, that he entered upon some part of Hanna’s thousand acres, claiming to own it, before he acquired possession from the dowress, and that he thus entered upon one of the tenements which had been fenced in or occupied by a tenant under the dower claim., Hanna’s patent, though it interferes largely with that of the plaintiff, covers only three fourths of an acre of the land now in contest; and the question made at the trial, was whether this patent could be set up to defeat the recovery of the three fourths of an acre which it covered.
Several instructions were given and refused on this subject; but the questions arising on them, may all be reduced to the single one, whether the Court erred in peremptorily instructing the jury, that the defendants could not avail themselves of Hanna’s patent in this case.
If, by any reasonable deduction from the evidence, the-jury could have been justified in finding that Barnett had-, taken possession of this particular spot, under a pur-, chase from the holders of Hanna’s patent, before he acquired the dower interest, the legal consequences of such a fact would be necessarily involved in the consideration of the question now in hand. But we think there was no evidence to justify such a finding. In the first *284 place, there is no evidence that Barnett was invested with the legal right of entry under Hanna’s parent; and it cannot be conceded that, when there was an adverse possession within the interference, by the actual residence of thedowress and her tenants upon different portions of it, his entry upon any part of the land, under a bare claim of title, could oust the previous adverse possession to any greater extent than that of his own occupancy by himself or his tenants. The law is well established to the contrary; and it follows that he could have had no possession of the three fourths of an acre in question under Hanna’s patent, if he did not enter upon and occupy that particular portion of it, before his purchase of the dower interest. For there is no doubt upon the evidence that this spot was in possession of those holding under Bell’s survey.
Admitting then that the jury might have found that Barnett took possession of some part of the interference, claiming under Hanna’s patent, before his purchase under Bell’s claim, there is no evidence tending to prove, that he so took possession of this particular part. So far as the evidence conduces to give locality to his previous possession, it conduces to prove, that it was at a distance from this spot, and that the residence of the dowress, and also Elk Garden creek, intervened. And this circumstance is sufficient to negative any mere inference that his possession extended to the point in contest.
But we go further and say that, as it is clear, upon the evidence, that the land had been long ,in possession under Bell’s claim, and, as it is equally clear in law, that Barnett, without title, could not gain that possession beyond his actual occupancy, the defendants could not avail themselves of his alleged possession of any particular portion of the interference, without proving, with reasonable certainty, at. least, that he had entered upon and occupied that particular portion, And that mere general proof that he had entered upon and occupied some part of the interference, without fixing his entry and occupancy upon this spot, would, not only be insufficient to. prove that he had occupied this point upon the *285 extremity of Hanna’s patent, and in the midst of the adverse possession under Bell’s claim, but would not conduce to prove that fact. If the general proof of entry upon some part of the interference, would authorize a finding, that he had entered upon this particular portion of it, the same general proof would authorize a finding that he had entered upon, and was possessed of every portion; and the effect would be that, in direct contra-; vention of the principle of law just asserted, the extent to which Barnett’s entry without title divested the adverse possession, would be measured, not by the extent of his occupancy or actual ouster, but by the extent of his claim.
A party in pos-j. session of land can set up no title adverse to that under which he! entered.
Where a tenant has entered upon and hglds land! under a particular title, if he. purchases anoth«¡u adverse claim, to the same land, the effect of the Purchase is, to strengthen and confirm his first title; while he continues to hold
under that, he cannot avail himself of his new purchase to prevent the reversion to his first* grantor, or defeat or impair the title acquired from him.
It is the duty of a tenant, or grantee, to protect and guard the title under which he entered, and holds, front all adverse claims; and to restore the possession to him from whom it wasj received, at the expiration of the term. He cannot defeat the right of his grantor, or those! holding his grantor’s title, to re-enter, by acquiring and setting up any new title derived from* a stranger.
From these views we are satisfied, that there is no evidence in the case, from which the jury would have been authorized to find, that Barnett had possession of the three fourths of an acre now in question, before he entered under his purchase from the dowress. And, as the Circuit Court had, therefore, the right, in instructing the jury on this branch of the subject, to exclude or disregard that fact, and all the evidence which was supposed to bear upon it, the legal consequences of that fact need not be considered or determined by this Court, in deciding upon the instruction..
Assuming, then, as the Circuit Court had a right to do, that Barnett acquired the possession of this portion of the land under his purchase of the dower interest of the plaintiff’s mother, and that he afterwards, while so in possession, purchased the same land from, the plaintiff’s husband, during the coverture-the only question is, whether the defendents, who subsequently purchased from Barnett, and acquired the possession from him,, can protect that possession, when demanded by the i • ,-rr c i i t ,, ., , . , . plaintiff, alter her husband s death, by setting up an older patent than hers. On this question, we have not a single J ... . i . . , doubt; and it is immaterial, m our view, whether the de *286 fendants show any connection with the elder patent, or ■ what may be the date of that connection.
Under the assumption that Barnett acquired the possession under his purchase of the dower interest— r , , , . which was, m fact, under the plaintiffs title—his possession, and that of his alienees, during the life of the dowress, and subsequently until the death of Shackle-ford, must be deemed, under the principles invariably asserted and maintained by this Court, to have been held under that title, and to have enured to strengthen, and perfect it. It was their duty, during this period, to guard it against adverse claimants, and upon the death of Shackleford, when their right to the possession, ceased, it was in law their duty to surrender it to the plaintiff. Their continued possession after that event,, was by her sufferance; it was, in fact, her possession,, and she had the right to enter upon it immediately, or at any subsequent period within twenty years. This was decided in the case of Miller v. Shackleford, so often referred to.
However weak the plaintiff’s right of entry might be, as compared with another title, it was perfect as against these defendants. They held her possession. They had acquired it under her title, and under an obligation, imposed by law, to restore it to her upon a particular contingency, viz: the death of her husband. Her action is not brought for a tortious entry in fact by them, but for a wrongful failure to perform an obligation which came upon them with the possession, and which rests upon them until the possession is lost or restored, or until her right to its restoration is extinguished. They cannot discharge this obligation, nor avoid its enforcement, by showing that, if they do surrender the possession to her, it can be recovered from her again, by another, or by themselves. Good faith, and long established principles require, that the person acquiring possession of land, under such an obligation, shall not be permitted to resist the demand of the possession, asserted under the title to which he is bound, except upon grounds consistent with the obligation itself, and growing out of the reciprocal duties which it imposes upon the other *287 •party. This principle has been often applied to cases in which the obligation to restore the possession arises from a contract between the parties; and it seems to ns, that it is equally applicable to all cases in which the. obligation, though imposed by law, arises necessarily from the relation of the parties to the same title, and from the fact of possession having been- acquired under that title. It is in effect the principle asserted in the case of Kirk v. Nichols’ heirs, where it was said by this Court, to be “a universal rule of law, as well as principle of policy and justice, that the possession shall be held according to the title under which it is taken.” 2 J. J. Mar. 409.
In that case, a widow being in possession of land in right of her dower, purchased in an adverse, paramount title, and then sold and conveyed the land to ano.ther, who entered into possession under his purchase. It was there held, that her alienee could not dispute the title of the husband’s heir, in a suit for recovering the possession, after the widow’s death; and that an attempt to destroy the relation in which she stood to the reversioners, without their consent, or to take shelter under an adversary title, would be a fraud on the title under which she acquired the possession. It is needless to add, that frauds of this character were peculiarly discountenanced by the common law.
The case referred to is decisive of the - present question. Here is the same possession which was acquired under a dower right, and continued under the analogous right of the husband in his wife’s estate. It was acquired and held under the title of the plaintiff, who is the reversioner, and it would be a fraud on that title, now, when her reversionary right to the possession has come in esse, according to the title, and to the relation which the defendents bear to it, to permit them to take shelter under an adversary title. They are by law rigidly estopped from doing so, and cannot resist her right to that possession which they acquired under her title, until they have either restored the possession, or by some act of hers, or by operation of time, acquired her *288 title, or until by judgment of eviction, they have heed released from their obligations to her.
The effect of a conveyance by deed is to put the grantee in the place ofthe grantor as to the title. As the grantee succeeds to all the rights of the grantor, such obligations of the grantee aa belong to, and inhere in, the estate, also devolve on him. And the principles which apjjfiy where a purchaser buys in an outstanding, adversary claim ( vide supra ) apply, as effectually, where the first purchasewas ty deed, as where it was in any other mode; and apply to each successive alienee of the purchaser, as they Would apply to him.-
An attempt is made to avoid this estoppel, and its eff fects, on the ground that the defendants hold by deed, and not by executory contract. But this distinction has no application to the case. It holds between vendor and vendee, between whom, an absolute conveyance by clothing the vendee with the vendor’s title, extinguishes the relation of dependence and subordination which subsists while the contract is executory, But it is not tfue that, because the possession held under an absolute deed, is no longer subordinate to the vendor or grantor in the deed; it is therefore independent of all the world. On the contrary, the effect of the deed is to substitute the vendee in the place of the vendor; it can give no other i'ight but such as the' grantor himself has. And as the grantee succeeds to his rights, so he also succeeds to such of his obligations as belong to and inhere in the estate which is transferred to him. The tenant for years cannot, by conveying the land in fee, extinguish the right of his lessor, to take or recover the possession when his time comes. And the grantee,- notwithstanding his deed, is held to the same obligation of restoring the possession, and comes under the same estoppel as to the title, which bound the lessor. Phillips v. Rothwell, 4 Bibb 33. So is the grantee by deed of the tenant in dower. Kirk v. Nichols's heirs, ubi. sup. And so, if the law is consistent with itself, is the alienee of the hus*. band holding in right of his wife, who acquires possession under that title; and so, while the principle is acknowledged, ‘that the possession shall be held according to the title under which it is taken,’ must every successive alienee of such alienee to whom the possession comes unbroken, be held subject to the same obligation and estoppel; until the tie which binds the possession to the title is broken by eviction, or the title is extinguished by time, or united to the possession by act of the pai’ties.
We are of opinion, therefore, that there is no error in the instructions on this subject; nor any other error *289 i‘n the record to the prejudice of the plaintiffs in error, and the judgment must be affirmed.
*#* Chief Justice R'obértsori took ito part in the decisión of this caáe.