## Baugh et al. v. Williams' Adm'r.
(Decided April 28, 1936.)

168

H. C. KENNEDY and J. S. OWSLEY for appellants.

R. C. TARTAR and C. C. BAGBY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

C. C. Williams was a World War veteran. When he was discharged from the army he had tuberculosis and was unable to work. From 1918, he was paid by the United States government compensation of $80 a month for a short time, when it was increased to $100, and paid until his death. He lived frugally and saved his money. The last years of his life were spent in the Veterans' Administration Hospital at Atwood, near Dawson Springs, Ky. At the time he entered it, and during his confinement therein, he owned a traveling bag which he kept at the hospital. During the period of his confinement there was located, and engaged in business, at Dawson Springs, the Commercial Bank of Dawson of which Charles K. Reed was assistant cashier. He acted in this capacity from 1922 to and including 1926. Williams, on June 5, 1922, opened an account with the Commercial Bank of Dawson and closed it July 6, 1922. On July 5, 1926, he reopened it by depositing to his credit $1,910.10. Subsequently, he deposited other sums until his account aggregated $2,112.71, which he withdrew on July 17, 1926, by giving and cashing a check to himself for this amount. At the time he withdrew this sum he was paid in gold certificates. At the time he withdrew it, his traveling bag was in his room at the hospital, where it remained until his death, which occurred suddenly in September, 1926. After his death those in charge of the hospital took possession of his traveling bag. They opened it and removed therefrom its contents and, after making an inventory, replaced the same and later sent it to his home in Pulaski county. In 1930, his traveling bag was sold and delivered by Vernice Williams, a brother,

to **Virgil** Baugh, who took possession of and used it. Until he sold it to Baugh, it was in his custody. In the early part of the year 1935, Susie Baugh, the wife of Virgil, appeared at the First State Bank of Eubank, Ky., with $1,040 in gold certificates. C. L. Gooch at the time was cashier of the bank. She requested an exchange of them for ordinary silver certificates for the same amount. At that time the federal government had imposed upon the owners of gold certificates the duty to surrender them. For this reason, Gooch first declined to receive them. Whereupon, she explained to him how she had obtained possession of them, stating that she was at home, cleaning a traveling bag of her husband, when she felt something bulky between the lining and the bottom. She examined it and discovered a hole in the lining in the bottom, covered with adhesive tape; she pulled it loose, put her finger in the hole, and got out $2,140. The certificates were twenties and fifties. They were old and of the large type. She also stated to Gooch that her husband had bought the traveling bag of Vernice Williams; "it was Chris Williams' (the decedent's) grip and she supposed that Chris had put the money in there." L. H. Hendricks was present at the time Mrs. Baugh presented the $1,040 to Gooch and heard the conversation between them. To Kinnaird Wesley, Virgil Baugh stated that his wife had found the money in a traveling bag which Vernice Williams had sold to him (Baugh); also, that it had belonged to Chris Williams and "Chris or somebody had split the bottom lining of it and put the money in the lining and pasted tape or something over it and that she had found over $2,000.00." He exhibited to Wesley a roll of bills and stated the amount he had received of his wife. About the same time he bought a farm in Lincoln county. To Ernest Morgan and James Rodgers he made substantially the same statements.

On these facts the administrator of Williams' estate sought in this action to recover of the First State Bank of Eubank, Ky., and Virgil and Susie Baugh, the $2,040, alleging that the decedent as the owner thereof had secreted it in the lining of his traveling bag which had been sold and delivered to Virgil Baugh, and that he and his wife had found the money and appropriated $1,040 thereof to their own use by deposit-

ing the same in the First State Bank of Eubank. He charged that they were insolvent and the bank was about to pay this sum over to them. He sought an injunction restraining the bank from doing so, and a decree that the Williams' estate was the owner of, and entitled to, the possession of this sum or "the equivalent in some other currency or moneys on deposit in the bank," and that Virgil and Susie Baugh be adjudged no right or title thereto. He asked for a personal judgment against the bank for $1,040. Later, he filed an amended petition adopting the allegations of the original, and charged that Virgil and Susie Baugh had extracted from the bottom of the traveling bag, as set out in the original petition, $2,040, and had converted $1,000 of this sum to their own use with the intent to deprive Williams' estate thereof, permanently. He asked a personal judgment against them for the $1,000 with interest from the date of the filing of the amended petition.

The bank filed an answer conceding the estate's title to the $1,040 with an explanation of its possession thereof. The Baughs traversed the petition and pleaded the statute of limitation of five years. This was traversed by a reply.

At the conclusion of the administrator's evidence, the Baughs and Williams' administrator, respectively, requested the court to grant a directed verdict, which it declined, and by an instruction directed the jury that "if it believed from the evidence the $1,040.00 now being held by the First State Bank of Eubank, was placed in the traveling bag, described in the evidence, by the deceased, C. C. Williams, to find for the plaintiff, and unless it so believed, to find for the defendants." The jury's verdict was in favor of Williams' administrator.

The Baughs, for reversal of the judgment against them, argue that this is an action "for claim and delivery of personal property," under section 180, Civil Code of Practice; the petition does not contain a particular description of the property sufficient to fulfill the requirements of sections 181 and 182 of the Civil Code of Practice; the judgment fails to meet the requirements of section 388 of the Civil Code of Practice, in that it does not direct the delivery of the gold

certificates, if to be had, or if not, their value, and damages for their detention. They, also, argue the court erred in disregarding their plea of limitation, and in its instruction.

The evidence of ownership of C. C. Williams of the $2,040 was amply sufficient to authorize and sustain a directed verdict for his estate. The fact that the Baughs found the money in the bottom of his traveling bag is well established by the evidence. Their so finding it did not vest in them any right or title thereto. The evidence showing that they had knowledge of the ownership of the money at the time they discovered it in the lining of the traveling bag is uncontradicted. The general rule of evidence applicable in other civil cases prevail, in an action against a party finding lost goods, to enforce the right of action arising out of such finding. As in any other civil action, disputed questions of fact are for the jury, and where the evidence, as in this case, is convincing and undisputed, the owner of the money or goods in the possession of a finder is entitled to a directed verdict. The Baughs were liable as for money had and received to the Williams' estate for the amount of the gold certificates and interest thereon, running from the time of their conversion of them.

The Baughs' conversion to their own use of the gold certificates occurred at the time they found them in the lining of the traveling bag, which was within five years next before the commencement of this action. The court properly omitted to give an instruction on the statute of limitation. Aside from this, the Baughs asked no instruction and, until requested, the court was under no duty to give it. See section 317, Civil Code of Practice, and annotation.

The only issue submitted to, and determined by, the jury under the instruction was the ownership of the deceased, Williams, of the money placed by him in the traveling bag.

The amount was not disputed; therefore, the sum of the recovery was one of law. And although the verdict of the jury failed to fix the amount recoverable, the court was authorized to render judgment for the amount stated in it. Equitable Life Assur. Soc. of U. S. v. Goble, 254 Ky. 614, 72 S. W. (2d) 35.

The Baughs failed to testify. The presumption is that they so failed because they could not dispute the evidence in behalf of Williams' estate. Guthrie. v. Foster, 256 Ky. 753, 76 S. W. (2d) 927.

They criticize the form of the verdict. The accepted rule is, that all that is requisite in a general verdict is that it contain such finding as will enable the court to pronounce judgment upon it for one party or the other. The essential issue in the case was the ownership of C. C. Williams of the gold certificates found by the Baughs in the lining of the traveling bag. This was the single issue presented by the pleadings and the facts, and submitted by the instruction of the court. When the instruction and the jury's verdict are taken together, the verdict responded to the sole issue, and it was enough to authorize the judgment entered. Miller v. Shackleford, 4 Dana, 264, 280; Walter v. Louisville Ry. Co., 150 Ky. 652, 150 S. W. 824, 43 L. R. A. (N. S.) 126, Ann. Cas. 1914 D, 441.

Wherefore the judgment is affirmed.