### ADRIAN v. McGILLIVRAY.

Court of Appeals of Kentucky.
Nov. 16, 1951.

Stanley Chrisman, Covington, for appellant.

Blakely, Moore & Harrison, Covington, Morris Weintraub, Newport, for appellee.

STEWART, Justice.

As a result of an automobile collision between the parties on August 11, 1949, on Taylor Mill highway, south of Covington, William Lee Adrian sued Donald McGillivray in the Kenton Circuit Court for $5950 for personal injuries and for damages to his automobile and McGillivray counterclaimed for $50,000 for personal injuries.

The jury returned a verdict that neither should recover from the other and, from the judgment entered thereon, Adrian appeals and McGillivray cross-appeals.

Each party claims the lower court should have directed a verdict in his favor; and both maintain the verdict is not one upon which a proper judgment can be based. Adrian assigns additionally two other errors: (a) that the trial court admitted incompetent evidence and (b) that the verdict was rendered through passion and prejudice. We shall examine each contention in the order set forth.

Adrian testified that he was driving his Plymouth sedan south on the Taylor Mill pike, a concrete surfaced county road, at about 3:30 p. m., on the day of the accident. He was rounding a banked curve on this highway when he first saw McGillivray's machine 200 feet away approaching from the opposite direction. The left wheels of McGillivray's car were then on the yellow line, he stated, and "they kept coming over to my side of the highway." He slowed down to a speed of about 15 or 20 miles per hour and started pulling off the road. McGillivray's car sideswiped the entire left side of Adrian's car after the latter said he had gotten as far over as possible on the shoulder on his side of the road. Adrian's car came to a standstill to his right about 20 feet farther south at the bottom of a slight grade. He testified that, after the collision, McGillivray's car zigzagged from one side of the road to the other "on back up the highway", blew out a tire, and finally came to rest in the front yard of a Mrs. William Green to the left of McGillivray's traffic lane. The distance this latter car traveled after the accident is variously estimated by witnesses at from 80 to 125 feet. Adrian's version of the wreck is corroborated by the proof of persons who, although not eye witnesses to the collision, testified that glass from the broken headlight of his automobile and dirt from under the fenders of his machine were on the extreme right hand side in the lane in which Adrian was traveling. Perhaps the most damaging evidence produced against McGillivray was that of Joe List who testified that he had followed McGillivray for about a mile and a half, trying to pass him, and that McGillivray drove with one arm out of the window of his car and with his head down, zigzagging his car back and forth in the road. However, List did not see the accident but he heard the noise from it shortly after he had passed McGillivray's car.

McGillivray testified that he was operating his Chevrolet sedan in a northerly direction well over on his side of the right-of-way at a rate of speed of about 37 miles per hour when "a car came out of nowhere and hit my automobile on the front end and left hand side." He was knocked unconscious by the impact of the two cars and regained his senses only after his automobile had come to a stop in the Green yard. Although they produced no eye witness account of the accident, except the scant testimony of McGillivray, counsel for McGillivray argue that certain physical facts proven at the trial established an iron-clad case in favor of their client. They rely upon skid marks which they claim pins liability for the accident upon Adrian. Adrian, however, challenges the competency of such evidence and we shall consider hereinafter the question of the admissibility of this proof. Four witnesses testified that a heavy black skid mark and a lighter one began in the lane of traffic on which McGillivray was traveling, about a foot and a half from the yellow line. These marks continued for a distance of four or five feet, then they separated while still on McGillivray's side of the road, next the heavy black mark passed over the yellow line, and finally it followed a course across the highway into the Green yard. McGillivray insists strongly that this evidence definitely locates the point of impact of the two cars within his right-of-way.

It appears that counsel for both parties were mainly concerned in their respective briefs with establishing the situs of the accident on the highway, assuming that the place of the collision would be the determining factor as to which party was negligent. It is well to note that three of the witnesses upon whose testimony McGillivray mainly relies arrived at the scene of the accident about an hour and a half after it happened and at a time after the two cars

had been removed. They were friends of McGillivray, they testified, and they voluntarily went to the place where the wreck had occurred in order to conduct an independent investigation. It is significant that these three witnesses made no examination of other portions of the road as to other marks. However, the testimony of Willie Lee Corbin, who arrived at the location of the wreck some forty-five minutes after the accident had happened and who assisted in removing the disabled cars, substantiates in a great measure the testimony of the three witnesses in question as to the skid marks.

▉ In D. G. Hayes Wholesale Grocery Company v. Fortney's Adm'r, 277 Ky. 441, 126 S.W.2d 864, 867, we stated that "it is indeed difficult to determine from marks in the road or on the vehicles the exact position of the respective vehicles at the time of a collision so as to ascertain with any reasonable degree of certainty, the fault or lack of fault on the part of the respective drivers". In the instant case Adrian and McGillivray testified as the only eye witnesses and their evidence is in irreconcilable conflict. Likewise proof of a secondary character introduced by one contradicts that produced by the other. Under such circumstances we conclude that neither party was entitled to a directed verdict and that the factual issue was properly submitted to the jury by the trial court.

Turning to the next error assigned by both of the parties, the question raised is: Did the jury return a proper verdict? The verdict at first was in the language, "We, the jury, agree on No. 4. /s/ Julius J. Schrieber, Foreman", written on the reverse side of Instruction No. 4, which instruction was, in substance, that neither Adrian nor McGillivray should recover against the other if each was negligent in the operation of his automobile. The jury was then ordered to return to its room to clarify its verdict. Shortly thereafter the jury presented to the lower court another verdict which was nothing more than Instruction No. 4 signed at the bottom by the above mentioned foreman. The jury was next polled. Eleven members agreed to the last verdict and signed their names at the

bottom of Instruction No. 4. The circuit court then entered judgment to the effect that neither party should recover against the other.

▉ In Baugh v. Williams' Adm'r, 264 Ky. 167, 94 S.W.2d 330, 332, it was said: "The accepted rule is, all that is requisite in a general verdict is that it contain such finding as will enable the court to pronounce judgment upon it for one party or the other." It would seem that so long as the intent of the jury can be determined from the language it employs the verdict should be allowed to stand. Here the intent seems plain. The jury was not in the dark as to the instruction it thought applicable to its decision of the case. Nor was the trial judge compelled to speculate as to what the jury meant by its verdict. We believe we have clear knowledge of what the jury was aiming at. When there has been a trial upon the merits of a case, this Court is slow to reverse the judgment because of some technical reason.

▉ Counsel for Adrian challenges the competency of the evidence of three of the witnesses who testified as to skid marks because something like an hour and a half had elapsed between the time of the accident and their arrival at the scene of it. It was definitely proven that the left front tire on McGillivray's car blew out, thus tracing a heavy black mark in its course across the road. It was also shown that the Taylor Mill pike was not traveled to the extent that even the lighter tire marks had been destroyed by traffic. We therefore believe the integrity of the marks had been preserved in such a state that the testimony introduced as to them, under the circumstances here, was admissible. See Southern Oxygen Co. v. Martin, 291 Ky. 238, 163 S. W.2d 459.

▉ Complaint is finally made by Adrian that the verdict was the result of passion and prejudice because the lower court allowed the jury to see a photograph of McGillivray's injured arm. As McGillivray's counter-claim was based almost wholly upon the injury to his arm, it was competent to introduce a picture showing its present

condition. However, it is evident the picture had little effect on the jury, since it returned a verdict against McGillivray.

Wherefore, the judgment is affirmed on the appeal and on the cross-appeal.