## Evans v. Crusott.
### (Decided Oct. 20, 1936.)

OSCAR M. SMITH and O. P. ROPER for appellant.

FELTS & LYNE and TAYLOR & MILAM for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant appeals from a judgment of $1,500, rendered against him in the Logan circuit court, in favor of the appellee for personal injuries sustained by him while riding on a motortruck owned by appellant.

Grounds urged in brief of appellant for reversal are: (1) Appellee and his co-servant, Homer Estes, at the time of the accident were operating or driving appellant's truck without the knowledge or consent of appellant and contrary to his orders; and (2) the verdict is not sustained by the evidence.

The facts are, in substance, these: Appellant was the sole owner of a laundry in Russellville, Logan county, Ky., and worked a number of employees, including appellee and Estes. Estes was driving the truck at the time of the accident. Appellant did laundry work for certain customers in Russellville and also other distant towns, Adairville and Auburn in Logan county and Elkton in Todd county, and operated a motortruck in transporting laundry to and from these other towns.

On late Saturday afternoon on July 21, 1934, the appellee and Estes set out to deliver certain laundry, including the laundry which was to be delivered to Elkton. They made certain deliveries in Russellville and then started to Elkton and while on the road between Russellville and Elkton their laundry truck collided with a passenger car being driven by J. M. Weathers, resulting in the injury of appellee.

1. Appellant testified that at about 5:30 or 6 o'clock on the afternoon of July 21, just previous to the time appellee and Estes started to Elkton to deliver the laundry, he told them that it was too late to deliver the laundry to Elkton that night, that it was dangerous to operate the truck on that road on Saturday nights, and that he would have the laundry delivered on the next morning, and in this he was corroborated by one of the employees of the laundry. On the other hand, appellee and Estes both deny that appellant gave them orders not to deliver the Elkton laundry on that night. They both testified that Estes was the general manager of the laundry and had charge of the employees and gave them orders pertaining to the work, and that Estes asked appellee to go with him to deliver the laundry to Elkton.

2. The evidence is also conflicting as to how the accident occurred. Appellee testified that, at the time of the collision of the cars, Estes was operating the truck at 40 or 50 miles an hour and was operating it about 27 inches to his left of the center line of the road, thereby colliding with the car being driven by Weathers. Weathers also testified that the truck was being operated at a high rate of speed and, when he saw it coming, he pulled over to the right of the center line of the road, and the truck was being operated to its left of the center line and collided with his car. But on this point Estes contradicts appellee and Weathers. He testified that he was operating the truck to his right of the center line of the road and Weathers' car was operated to its left of the center line and collided with his truck. About three other witnesses who appeared on the scene soon after the collision testified that they saw certain marks on the asphalt indicating that the truck was being operated on its proper side of the road. One of these witnesses stated that the mark indicated a scrape by a spoke of the wheel of the truck which was broken and crushed in the collision. The collision seems to have been a very heavy impact, and

neither car stopped at the point where the collision occurred. The truck ran on a considerable distance and turned over and the Weathers car stopped in the ditch. The marks observed by witnesses at the point of the collision were somewhat persuasive, or circumstantial evidence, of the point at which the collision may have occurred with respect to the center line of the road, but in such circumstances, it is difficult to determine from such marks the exact point each car was being operated at the time, and such evidence does not carry the weight as that of eyewitnesses. At the most, it is not conclusive. Thus we have Estes' testimony that he was operating the truck on his side of the road and the testimony of Weathers and appellee to the contrary.

It will be seen from this resume of the evidence that it is conflicting on both points relied on for reversal. On the first point the court instructed the jury, in substance, that, if it believed from the evidence that appellee and Estes were operating appellant's truck contrary to his orders and without his knowledge or consent, they would find for the defendant, and (2) the court also instructed the jury, in substance, that it was the duty of Estes to operate his truck on the right side of the highway keeping a lookout ahead in order to avoid collision with other vehicles on the highway, to operate said vehicle at a reasonable rate of speed, etc., and, if he failed to exercise any or all of these duties and as a direct and proximate result of said failure, if any, the truck of the defendant collided with or struck the car of J. M. Weathers, and by reason thereof the appellee was injured, they would find for the plaintiff, and, unless the jury so believed, it would find for the defendant. Other instructions were given covering all phases of the case, the correctness of which is not questioned. Under the instructions, the jury could not have found for appellee had it believed either that he and Estes were operating appellant's truck contrary to his orders and instructions, or that it was being operated on its proper side of the road, or that the accident was not caused by the negligence of Estes.

Upon the evidence and instructions the jury found for appellee, and we are unauthorized to disturb its verdict.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.