## D. G. Hayes Wholesale Grocery Co. et al. v. Fortney's Adm'r.

Feb. 3, 1939.

George K. Holbert, Judge.

LAURENCE B. FINN and FAUREST & FAUREST for appellants.

T. O. JONES and J. R. LAYMAN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In September, 1935, the appellant, D. G. Hayes Wholesale Grocery Company, a partnership composed of D. G. Hayes and others, were operating, by their driver Earl Carter, a motor truck in a southerly direction from Louisville, Kentucky, over Highway No. 31-W. The truck had passed through Fort Knox, in Hardin County and while on a curve near the railroad overpass, it collided with a Chevrolet Coupé being driven in a northerly direction by appellee's decedent, Lonnie R. Fortney, and resulted in the death of Fortney. Vollie Fortney was appointed administrator of the estate of decedent and brought this suit in the Hardin Circuit Court to recover of appellant for his decedent's death. A trial resulted in a jury verdict and judgment thereon for the sum of $12,500 in favor of the plaintiff and to reverse that judgment appellant has prosecuted this appeal.

The sole ground insisted on for reversal of the judgment is the sufficiency of the evidence. It is insisted (a) that the evidence is insufficient to take the case to the jury, and (b) that the verdict of the jury is flagrantly against the weight of the evidence.

There were riding in the car with deceased at the time of the collision his sister, Sarah Fortney, their nephew, James Pearson, twelve years of age, and Miss Maud Corey. Sarah Fortney testified as follows:

"Q. What first called your attention to the approach of the truck? A. Well, I saw it and I thought that it was headed or just bearing down on us.

"Q. What position on the road was the truck

when you saw it? A. It was about in the center of the road headed right towards us as we were going into the curve.

"Q. What happened after you saw the truck? A. Well, it just kept approaching as we were going into the curve, with our car in this position—we were making the curve and it struck us in the side and knocked our car off the road—the rear of our car was off the road and the two front wheels were on the road.

"Q. What part of the truck struck the car, do you know? A. The left front bumper—fender.

"Q. Do you know which place on the car it struck? A. It struck the rear of the car.

"Q. What side of the road was the car you were in on in the way it progressed? A. On the right side of the road going north.

"Q. What side of the road was it on when this truck hit you? A. On the right side of the road; we were taking the inside of the curve, going north.

"Q. How fast was the car, in which you were riding, traveling? A. Twenty miles an hour.

"Q. Who was driving? A. My brother, Lonnie Fortney.

"Q. He was the owner of the car I believe? A. Yes sir; he was the owner of the car.

"Q. How do you know that the car that you were in was traveling twenty miles an hour? A. On account of the signs in the Fort showing the speed limit, and I observed the speed limit that we were driving.

"Q. You mean the sign at Fort Knox? A. I observed the speed we were driving.

"Q. Had it been mentioned by the occupants of the car? A. Before we came to the Fort it was mentioned. It was mentioned that—

"Q. Had it been mentioned? Not what was said. A. Yes sir.

"Q. You say you looked at the speedometer? A. Yes sir; I did.

"Q. You are sure you weren't going over twenty miles an hour at that time? A. That is right.

"Q. Did the rear wheels or any part of the car that Lonnie was driving skid before the truck struck it? A. No sir; they didn't."

James Pearson testified as follows:

"Q. Before the collision and before you got to that viaduct—did the collision occur before you got to that viaduct or after you passed it on your way toward Louisville? A. After we passed it.

"Q. When did you first see the truck? A. Well, I was looking down to the side and I looked up and the truck was coming across the road. I don't know how far it was—quite a ways from the underpass.

"Q. Quite a ways from the underpass? A. Yes sir.

"Q. Did you hear any signal to warn you that the truck was coming? A. No sir.

"Q. When you saw the truck about what position on the road was it? A. It was about—it was coming towards us—it was about in the middle.

"Q. What position was the automobile that you were riding in at that time on the road? A. On the right hand side of the turn, near the curve there— the turn there.

"Q. You mean on the right hand side the way you were going towards Louisville? A. Yes sir.

"Q. What happened after you first saw the truck? A. Well, it hit the back end of our car and we had a collision and it knocked the car around.

"Q. Were you still on your right side of the road when the collision came or the truck struck you? A. Yes sir.

"Q. What part of the automobile did the truck strike first? A. First, it struck the back wheel on the left hand side.

"Q. What happened then? A. Well, it sorta carried the truck around—it come on in there and then the truck throwed us around so the back end

was off the road and the front end was on the road."

Earl Carter, driver of the truck, testified that he entered the curve at a speed of fifteen or twenty miles an hour and that decedent's car was being operated at about forty or forty-five miles an hour and in negotiating the curve the rear of it skidded and the left rear fender struck the left front fender of the truck; that he was operating his truck to his right of the center of the road. This witness was corroborated by the evidence of Miss Corey who was riding in the Chevrolet Coupé with decedent and also by Carlton Riggs who was standing on a side road about sixty feet from the scene of the accident. Riggs testified that he heard G. Fortney's tires "crying" as he entered the curve and that decedent's car was running at a speed of forty or forty-five miles an hour and it skidded to the left and struck the truck which was being operated on its right of the road at a speed of about twenty miles per hour. If the evidence of these three witnesses for defendant is to be believed the accident was not brought about by any negligence or fault of appellant's driver, while on the other hand if the evidence of plaintiff's witnesses is to be believed it was the fault of the driver of the truck.

Appellant does not contend that the evidence is insufficient to take the case to the jury or to sustain the verdict because of the conflict in the testimony of the witnesses for the respective parties. There could be no doubt that the jury had the right to believe the evidence of plaintiff's two witnesses in preference to that of the three witnesses who testified for appellant. Appellant relies upon certain physical facts showing the indentations or marks on the respective vehicles. This evidence is in the nature of photographs taken of the truck and Chevrolet Coupé, and it is not denied that the photographs are correct in that they show the marks or damages to each of the vehicles which resulted from the collision. It appears from the photographs that the left rear fender of the coupé in which deceased was riding was struck about the center or middle of the fender, principally over the rear wheel, and the left front fender of the coupé is mashed or indented over the top of the wheel. But the chief feature or physical fact relied on for appellant is the marks or damages done to the truck. There are no marks or other evidence of collision on the front end of the fender of the truck nor is

the bumper broken or bent nor the headlight broken. These photographs clearly show that the truck did not collide with the coupé in what is usually called a direct or straight head-on collision, but rather diagonally.

It is insisted for appellant that the physical facts are conclusive that the collision did not occur as stated by the plaintiff's witnesses. It is to be noted that Sarah Fortney stated that when she first saw the truck it was in the center of the road "headed right toward us as we were going into the curve," and James Pearson stated that when he first saw the truck it "was coming across the road" and later said "it was coming toward us—it was about in the middle."

But it is not to be overlooked that the plaintiff's witnesses also testified that the coupé in which they were riding was to the right of the center of the road and the truck in the middle of the road. The respective vehicles being in this position they were not in direct line with or directly fronting each other. The language of Miss Fortney that the truck was "headed right toward us" and the language of James Pearson that "it was coming toward us—it was about the middle," is not conclusive that the witnesses meant to say that the truck was directly facing them, but "coming" or "headed" toward them in a diagonal position, so as to result in what is commonly known, in automobile parlance, a "sideswipe" or side collision and the photographs clearly show that it was a side collision rather than a direct front collision. It is thus seen that the physical facts can with some degree of plausibility be harmonized with the evidence of the eyewitnesses for plaintiff.

Appellant relies upon certain cases and authorities which hold that where the testimony of witnesses is so contrary to physical facts and the laws of physics as that they cannot be harmonized the physical facts are controlling as against the testimony of witnesses. But as we have seen in the present case, the physical facts and the testimony of the witnesses are not so diametrically opposed as to bring this case within the rule relied on for appellant. Furthermore, it is commonly known that it is indeed difficult to determine from marks in the road or on the vehicles the exact position of the respective vehicles at the time of a collision so as to ascertain with any reasonable degree of certainty, the fault or lack of fault on the part of the respective drivers. In such cases the positive evidence of eyewitnesses

is more reliable, unless, as we have stated, the physical facts are so contrary to the testimony of the witnesses as to render their evidence impossible. We do not think this case comes within that category.

The jury heard the evidence of the witnesses and had before it the photographs, maps, and other physical facts relied on by appellant and took into consideration the whole of the evidence and found for the plaintiff. The physical facts being such as not to render the theory of plaintiff's witnesses impossible, nor indeed, unreasonable, it follows that there is sufficient evidence not only to take the case to the jury, but also to support the verdict.

Judgment affirmed.