Southern Oxygen Co. v. Martin.
Same v. Whitt (two cases).
Same v. Morrow.

June 19, 1942.

Andrew E. Auxier for appellant.

J. P. Hobson, Jr., W. E. Whitt and W. H. D. Preece for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

This appeal grows out of an automobile accident where two persons were killed and two were injured. The four cases were consolidated in the circuit court for the purpose of trial, likewise they have been heard to-

gether here. Verdicts were rendered for the same amount, $1,500, in favor of each plaintiff. To reverse the judgments entered thereon, appellant, Southern Oxygen Company, hereinafter referred to as the defendant, mainly relies upon three errors: (1) The verdicts are flagrantly against the evidence; (2) incompetent evidence was admitted; (3) proper instructions offered by defendant were rejected.

The accident happened about 4:20 o'clock on the afternoon of August 14, 1939, at a curve on the highway between Jenkins and Pikeville. It was raining at the time and the highway, which was black-top, was slippery. Defendant's truck, driven by Howard T. Hensley, was proceeding in a southwardly direction, and a Plymouth car, in which were six negroes and their baggage, was traveling northwardly. The car was driven by Dan Rutledge and on the seat with him were Lillian Morrow and Viola Martin. There were two grown girls on the rear seat with a ten year old boy, Amos Morrow, Jr., who was 57 inches tall, seated between them. In the collision between the car and the truck the left portion of the top of the car was mashed, which resulted in the immediate death of Dan and injuries to Felicia Stevenson, seated directly behind him, from which she died a few hours thereafter. Viola received rather severe injuries about her face and head and to one of her knees, while Amos suffered a broken leg.

The occupants of the car had left Birmingham about mid-night on Aug. 13th, and had driven continuously for about fifteen hours. Lillian surrendered the steering wheel to Dan at Jenkins about two hours before the accident. The only eyewitnesses to the accident were the persons in the car and the driver of the truck. The three occupants of the car who testified, Lillian, Viola and Amos, all stated that the car was proceeding on its right (east) side of the road at a speed of some 12 or 15 miles per hour and just as it emerged from the curve they sighted the truck from 100 to 150 feet up the highway; that it was approaching at some 35 or 40 miles per hour, straddle of the line marking the center of the road; that when its driver attempted to pull the truck to its right (west) side of the road, it skidded on the slippery highway and the back end thereof collided with the car some 20 feet from the end of the curve.

Hensley, the driver of the truck, testified he was go-

ing down a one and a half per cent grade at 30 or 25 miles per hour and saw the car at a distance of 150 feet approaching on his (west) side of the road with its driver making an effort to pull to his right (east), but the car skidded. Hensley testified he was traveling on the extreme west edge of the road with two wheels on the berm to prevent skidding. As the car approached on his side he pulled his truck over until it struck some guard posts protecting a high embankment on his right, two of which posts were bent and the third knocked down by his truck; that he had brought his truck to a complete stop before the collision with practically all of it off the west side of the pavement; that the road was ''banked'' at the point of the collision, the west side being the higher, and the front portion of the car ran under the corner of the bed of the truck just behind the cab.

After the collision the car was angling across the road with its front end west of the center of the road and about 4 feet from the truck, and its rear wheels were some two feet from the eastern edge of the pavement. Amos testified the truck drug the car over to the west side of the road. A photograph of the car shows it was badly crushed on the front left side with the left front wheel down, the left part of the bumper on the ground and the left front part of the top mashed in. There were two gashes 40 and 48 inches respectively from the western edge of the pavement which Hensley testified were made by the car when its left side went down. Several witnesses for the plaintiffs who visited the scene the day after the accident described the gashes or scars on the highway as being on the car's side, or east, of the center line. The pavement at the place of collision was 21½ feet wide with a berm of about 5 feet on the west at the edge of which were guard posts as protection against a steep declivity. The east side of the road had a narrow berm as a hill bordered the road on that side. There was no white, or any, line marking the center of the highway. A person or two testified they saw immediately after the accident a track on the western berm for 30 or 35 feet which led to the truck.

Hensley and other witnesses for the defendant testified to hearing Lillian say immediately after the accident that the surviving occupants of the car were asleep and did not know how the accident happened. She testified she was hysterical at the time and did not know what

she was saying. The following day Lillian and Viola each signed written statements detailing what they knew about the accident. Viola's statement recited that she was asleep at the time of the collision and did not know what happened just previous thereto. Lillian said in her statement that she was dosing and waking up; that the wreck occurred as Dan attempted to pass a truck going in his same direction, and defendant's truck appeared traveling at a moderate rate of speed on its right side of the road. While both women admit signing such writings, they testified they were suffering from their injuries and did not understand the full purport of what they signed and that the statements were not correct. Certainly, there is no evidence in the record that Dan was attempting to pass another vehicle at the time of the accident. The testimony of Viola and of Amos contradicted several statements contained in their depositions taken as if upon cross-examination.

Defendant vigorously insists that the physical facts when considered in connection with the inconsistent and contradictory testimony given by Viola, Lillian and Amos show the verdicts are flagrantly against the evidence. This collision occurred between a truck weighing 15,000 and a car weighing 3,200 pounds. It happened on a wet and slipper highway, and as was written in C. L. & L. Motor Co. v. Achenbach, 259 Ky. 228, 82 S. W. (2d) 335, 338, "Freakish effects are sometimes caused by violent impacts of moving bodies." And it was said in D. G. Hayes Wholesale Grocery Co. v. Fortney's Adm'r, 277 Ky. 441, 126 S. W. (2d) 864, 867, "it is indeed difficult to determine from marks in the road or on the vehicles the exact position of the respective vehicles at the time of a collision so as to ascertain with any reasonable degree of certainty the fault or lack of fault on the part of the respective drivers." There were no disinterested eyewitnesses to this accident, and we cannot say from human experience or from the accepted laws of motion or mechanics that this collision did not occur as described by witnesses for the plaintiffs, but that the truck driver's version was correct.

It is true there were several material contradictions in the testimony of the witnesses for the plaintiffs, but we cannot say such contradictions rob their testimony of all probative value. Such went to the credibility of the witnesses, and it was for the jury to weigh their evidence

in connection with the physical facts exhibited to it in the form of photographs and the testimony of disinterested witnesses. The evidence is conflicting and while we may think it preponderates in behalf of defendant, yet we cannot say the verdicts for the plaintiffs are flagrantly against the evidence and appear to be the result of passion or prejudice which would entitle defendant to a directed verdict under the rule stated in Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877.

Complaint is made that the court erroneously permitted certain witnesses to testify for the plaintiffs as to scars and gashes they observed the following day in the highway at the scene of the accident, citing Appalachian Stave Co. v. Pickard, 266 Ky. 565, 99 S. W. (2d) 472, and Girtman's Adm'r v. Akins, 275 Ky. 2, 120 S. W. (2d) 660. The marks on the road described by these witnesses were not of the fleeting nature of the imprint of a tire in dirt as were the marks in the Pickard case, but were of a rather permanent character made by steel instruments gouging into the black-top road. It would appear that these marks were of such permanency as to take this evidence without the rule enunciated in the Pickard and Akins cases.

The court submitted to the jury the question of whether or not Dan, the driver of the car, was guilty of contributory negligence, and defendant insists it was entitled to the instructions it offered on the contributory negligence of the other plaintiffs on the theory that it was for the jury to determine whether or not they were negligent in riding in a crowded car driven by one suffering from physical and mental fatigue. The court properly refused such instructions since there was no evidence upon which to base them. Dan had been driving only about two hours and there is nothing in the record to indicate he was either tired or sleepy. Nor is there evidence that the fact three persons were riding on the front seat contributed to the accident. There is no evidence of improper or careless driving by Dan at any time before the accident which would put the other occupants on notice that the car was being negligently operated. This case is clearly distinguishable from Mattingly v. Meuter, 275 Ky. 294, 121 S. W. (2d) 676, relied upon by defendant. There the car had been driven at an excessive rate of speed for such a distance as to raise the question of whether or not the plaintiffs riding in the

car knew, or by the exercise of ordinary care could have known, that it was being driven in a careless or reckless manner.

In the first instruction offered by defendant in each case the duties of the driver of the car are enumerated and the jury is told that if the driver negligently failed to perform any one or more of them, and his negligence was the sole cause of the accident, then it should find for the defendant. Among the duties this instruction imposed upon the driver are those contained in Section 2739g-69h, Kentucky Statutes (1939 Supplement), that in defiles, canyons or mountains the driver should keep the car as near the right-hand edge of the highway as possible, and upon approaching any curve where the view is obstructed for 200 feet along the highway he should give audible warning with the horn; also it imposed the duty provided in Section 2739g-51, that it shall be prima facie evidence of unreasonable or improper driving to go around any sharp curve in excess of 25 miles per hour. Defendant's brief does not point out where the evidence may be found that this curve obstructed the view of the highway for a distance of 200 feet and a reading of the record reveals no such evidence, although in places it suggests such a possibility. Nor is there proof in the record as to the degree of this curve and a "sharp curve" is defined in Section 2739g-1(h) as one of not less than 30 degrees. Therefore, the court properly refused to impose any of these duties upon the driver of the car in the absence of proof upon which to base same. National Linen Supply Co. v. Snowden, 288 Ky. 374, 156 S. W. (2d) 186.

The first instruction offered by the defendant in each case further provided that if the driver of the car exceeded a speed of 45 miles per hour, either on the curve or straightaway, it was prima facie evidence of unreasonable and improper driving. There was testimony that as the car entered the curve and immediately before the accident it was traveling from 45 to 50 miles per hour, hence it was incumbent upon the court to give the proper instruction on this point. See Nowak v. Joseph, 275 Ky. 470, 121 S. W. (2d) 939, where the question of instructing on speed in excess of the statutory rate is discussed and a form of instruction is given. If defendant's theory of this case is correct, the sole cause of the accident was that the car came around the curve

at such a speed as to cause it to cross the median line of the road, and it was prejudicial error for the court where defendant offered such an instruction to fail to incorporate properly in the instructions a duty, as set out in the Nowak case, on the driver of the car not to exceed the statutory rate, and because of such error the four judgments must be reversed. This conclusion obviates the necessity of discussing the questions of improper argument, newly discovered evidence and that the verdicts in favor of Viola and Amos are excessive.

Judgments reversed, and the cases remanded for proceedings consistent with this opinion.