**C. M. CARPENTER et al., Appellants,**

**v.**

**Blanche W. GALLOWAY, Admrx., etc., Appellee.**

Court of Appeals of Kentucky.

March 24, 1961.

Stoll, Keenon & Park, Lexington, Edwin A. Monroe, Jr., Falmouth, for appellants.

Hoyt B. Best, Falmouth, for appellee.

PALMORE, Judge.

Donald Galloway was killed in a head on sideswipe collision between a truck he was driving and another truck driven by the appellant Dixon and owned by the appellant Carpenter, against both of whom Galloway's administratrix recovered a verdict and judgment for $35,000 in this wrongful death action. The questions on appeal are whether (a) the evidence was sufficient to support the verdict, (b) evidence of the decedent's accumulated estate was improperly admitted, and (c) the instructions were prejudicially erroneous.

The accident occurred on Kentucky Highway 17 several miles north of Falmouth in Pendleton County. At the point of collision the road runs east and west, but the witnesses referred to the respective lanes of traffic as "northbound" or "southbound," depending on the direction of travel to or from Falmouth, and we shall do the same. The highway is of ordinary blacktop construction sufficiently wide to accommodate two lanes of vehicular traffic, one in each direction, but without a marked center line.

The accident happened just north of a small bridge on the road flanked by a metal

guardrail on each side. From the south the road approaches this bridge on a straight course, dipping slightly downward. From the north it approaches the bridge at a considerably more acute downward grade, falling 12 feet in a distance of 130 feet, and on a 9 degree curve to the right breaking some 30 to 50 feet north of the bridge. Galloway was driving northward from Falmouth in a fairly new dump truck loaded with 7½ tons of gravel. Dixon was driving southward toward Falmouth in an unloaded 1949 model International dump truck. The collision occurred within one and one-half truck lengths north of the bridge, at which point Galloway had crossed the bridge and was entering the slight curve to his left and Dixon, coming downhill, was emerging from the curve. There was an oak tree 15 feet to the side of the southbound lane, the foliage of which would, until he came within 200 feet of the bridge, block the southbound driver's view of the road beyond the bridge.

Each driver was alone. Dixon, driver of the southbound truck, was the only eye-witness to testify. His version was that as he approached within 20 to 25 feet of the bridge at a speed of about 20 miles an hour on his own side of the road he saw the Galloway truck about 100 feet south of the bridge coming toward him at a speed of 60 miles per hour. He said he did not know the width of the bridge but that it was wide enough for two dump trucks to pass. Though he did not directly say so, the necessary implication of his testimony was that the Galloway truck must have been partially in its wrong lane of traffic, because he said that when he saw it coming he cut his truck over to the right, with the two front wheels and the right rear wheel in the ditch and his left rear wheel 3 to 3½ feet on the blacktop, and at the moment of the impact was stopped dead with the left front side of the truck against the guardrail of the bridge. He saw no evidence of any slackening of speed or braking of the Galloway truck, which after striking his truck veered on across the road and into the yard of a neighboring house, where it struck and completely uprooted a locust tree some 11 inches in diameter. According to other witnesses, including the state trooper who investigated the accident, immediately following the collision the Dixon truck was sitting crosswise, or diagonally, in the southbound lane with the left front side along the fender or running board resting against the guardrail at the north end of the bridge and the rear end extending out into the highway almost to (but not across) the center of the road.

The plaintiff's case rested entirely on circumstantial evidence. The sheriff, state trooper and other witnesses observed on the pavement a tire skid mark 86 feet in length leading to the right rear wheel of the Dixon truck. Some of them located it as 3 feet, and others as 2 or 3 feet, from the right hand edge of the southbound lane of the pavement. On direct examination the trooper said this track was 3 feet from the middle of the road, but on cross-examination he said it was 3 feet from the shoulder. The transcript shows the sheriff testifying that at the point of impact this mark was 3 feet from the side of the road. According to the appellee's brief the sheriff later made an affidavit that the transcript was in error and that he had located the track as 3 feet from the *center* rather than the *side* of the road, but in the absence of any indication in the record that a correction was made or sought in the trial court we are obliged to accept the transcript as correct. The sheriff testified also that the bridge was 16 feet wide and that "the average width of a truck is around 8 feet." In this respect there is a conflict between the sheriff's evidence and that of an engineer who introduced a drawing of the highway for the appellants and said that the paved portion of the highway was "approximately 22 feet" wide. The map itself indicates a width of 20 feet without variation as the road crosses the bridge. The engineer, in introducing the map and testifying with respect to it, was never

asked by either attorney whether it was accurate or how and with what degree of precision he measured the width of the road, if, indeed, he personally measured it at all. Dixon testified, "I swear I don't know exactly but it weren't no 22 feet, the highway weren't I don't think." The jury viewed the scene, but did so before the introduction of testimony. Photographs taken at the scene by the trooper during his investigation show the mark to which the witnesses referred, and if it was made by the right wheel of the truck, as the jury was entitled to believe, it would indicate that the left side of the Dixon truck must have been across the center of the highway.

On completion of his investigation of the accident the trooper cited Dixon for "failing to yield the right-of-way" (KRS 189.-310 provides that vehicles proceeding from opposite directions shall pass each other from the right, "each giving to the other one-half of the highway as nearly as possible") and involuntary manslaughter. The trooper said that later on in the morning Dixon "made a statement that he did fail to yield the right-of-way to the Galloway truck," and the county judge testified that he pleaded guilty to that charge and paid a fine of $22.

There was no evidence of any tire marks in the northbound lane of traffic, where Galloway was traveling. Debris from the trucks fell in the middle and on both sides of the center of the road. The appellants contend that placing the right rear wheel of their truck 3 feet from the right edge of the pavement, with a truck approximately 7½ feet in width, positively shows that all of the truck was on its own side because the highway was 22 feet wide. This contention ignores the testimony of the sheriff to the effect that the bridge was 16 feet wide. Though it is possible that the bridge was narrower than the approach, it does not appear perceptively so from the photographs, nor does the map introduced by their witness indicate any variation in width. The accident happened almost at the north end of the bridge. In fact, Dixon said his truck was against the guardrail when it was sideswiped by the Galloway vehicle. In this connection the photograph on which the trooper identified the tire track from the right rear wheel of the Dixon truck is particularly damning. Photographs may, of course, be deceptive, but the one to which we have reference was introduced by the appellants in cross-examining one of appellee's witnesses, and, having been produced and qualified as an accurate representation of the scene, it is entitled to credence. We think the evidence establishes with considerable certainty, and not merely by "inference" as suggested by appellants, that the tire mark 3 feet from the edge of the highway at the point of impact was made by the right rear wheel of the Dixon truck, from which it follows that the position on the road of the left side of the truck is not an inference based on an inference, but is an inference based on a fact established by the evidence.

It is argued that where the only eyewitness to an accident is the driver of one of the vehicles and the issue is which vehicle was on the wrong side of the road, the positive affirmative testimony of the surviving driver that he was on his own right hand side entitles him to a directed verdict unless the physical facts clearly place his vehicle on the wrong side. Cited in support of this proposition are the cases of Union Underwear Co. v. Barnett, 1941, 285 Ky. 488, 148 S.W.2d 339; Logsdon v. Husmann & Roper Freight Lines, 6 Cir., 1955, 227 F.2d 776, 778; Hereford v. Coombs, Ky.1952, 253 S.W.2d 262; D. G. Hayes Wholesale Grocery Co. v. Fortney's Adm'r, 1939, 277 Ky. 441, 126 S.W.2d 864; and Southern Oxygen Co. v. Martin, 1942, 291 Ky. 238, 163 S.W.2d 459.

Assuming the rule were as thus suggested, it is doubtful that it could apply in view of Dixon's statement and action with respect to the citation for failure "to yield the right-of-way," which the jury was authorized to consider as in the nature of an

admission that he had failed to give half the road to Galloway. Be that as it may, the fact is that there is no such rule.

In the Union Underwear Co. and Logsdon cases verdicts favorable to plaintiffs were set aside because they rested on physical evidence of insufficient probative force to warrant submission to the jury in the first place. In Logsdon the court described the evidence of marks in the road as "vague and uncertain," and in Union Underwear Co. said the physical evidence created a mere *possibility* that the defendant's vehicle *might* have been on the wrong side of the road at the time of the collision. In the instant case, if the right rear wheel of the Dixon truck was 3 feet to the left of the pavement edge at the moment of impact it would follow not merely that the truck "might" have been partially on the wrong side, but that it very probably was. We do not consider this physical evidence as "vague and uncertain."

The D. G. Hayes Wholesale Grocery Co. and Southern Oxygen Co. cases each involved a plaintiff's verdict that the defendant sought to have set aside on the basis of physical facts, and in each the physical evidence was held insufficiently conclusive to destroy the probative value of eyewitness testimony on which the verdict was based. In the Hereford case, wherein it was observed that the physical facts were more favorable to the defendant than to the plaintiff, and a judgment directing a verdict for the defendant was therefore affirmed, this court, quoting from Silver Fleet Motor Express v. Wilson, 1942, 291 Ky. 509, 165 S.W.2d 48, 51, specifically recognized that in some cases physical evidence may so unerringly indicate the vital facts that it is conclusive against the testimony of witnesses to the contrary.

In both Whitt v. Cato's Adm'r, Ky.1957, 306 S.W.2d 260, 261, and Hoover Motor Express Co. v. Edwards, Ky.1955, 277 S.W. 2d 475, though the judgments were reversed on other grounds, physical evidence of marks on the highway was held sufficient to support a verdict as against the positive testimony of the surviving driver and only living eyewitness. The law is properly stated in the Whitt opinion as follows:

"In cases where the defendant is the only eyewitness to an accident, then necessarily all other evidence is circumstantial. It was for the jury to determine the weight and inferences to be drawn from the testimony concerning the marks, and to determine whether the circumstances described by the appellee's witnesses or the eyewitness account of the appellant was to be accepted."

It will be noted that the cases cited by appellants on this point illustrate two radically different situations, in one of which the evidence is tested for its sufficiency to *support* a verdict and in the other it is tested for its sufficiency to require *setting aside* an adverse verdict returned by a jury without peremptory instruction. In the first of these it is enough for the evidence of physical facts to indicate a reasonable probability, regardless of whether it is opposed by the testimony of an eyewitness. In the other, where the jury has chosen to believe the eyewitness, both the evidence of the physical facts and the persuasive force of those facts must be clear and conclusive. The latter test would have applied in this case only if the verdict had been for the defendants and the plaintiff had sought to set it aside. As it is, the jury chose to believe the version of the physical facts give by plaintiff's witnesses, and the inferences logically and reasonably to be drawn from those facts support its verdict.

As there were no marks to indicate the position of Galloway's truck with regard to the center of the road appellants contend that he must be found contributorily negligent on the basis of Dixon's positive testimony. The burden of proving contributory negligence was on the appel-

lants. Dixon was a party. The jury was not obliged to believe him, and obviously did not. Cf. Vernon v. Gentry, Ky.1960, 334 S.W.2d 266, 268.

During the trial, in proving the decedent's earning capacity his wife testified that at the time of their marriage he had nothing and that when he died he owned some cows and farming equipment. Appellant, citing the amount of the verdict, urges that this testimony was prejudicial because it was proof "that the deceased died practically penniless." It is competent in a wrongful death action to show the decedent's accumulations as bearing on his industry and earning capacity. Temperly v. Sarrington's Adm'r, Ky.1956, 293 S.W.2d 863, 869. This can scarcely be done without showing what the man had when he died. Theoretically, evidence of a meager estate is a sword that cuts both ways, in that it may indicate improvidence and limited earning power and at the same time evoke sympathy for the widow and children. But it is unavoidable, and if the trial court exercises proper control, preventing any attempt to dwell upon or emphasize the modest size of the estate, as he did in this case, it is not prejudicial. Moreover, from the nature of the decedent's occupation and the size of his proved income as a tenant farmer and part-time truck driver the jury could not have been under any illusions as to his financial condition anyway. The case is quite different from Southern Ry. Co. in Kentucky v. Evans' Adm'r, 1901, 63 S.W. 445, 23 Ky. L.Rep. 568, wherein the trial court erroneously permitted testimony that the widow and four children were unable to live on her income.

It is next contended that the instruction placing on both of the drivers the duty "to drive their respective trucks on the right hand side of the road" and "to drive same at a reasonable rate of speed, having regard for the traffic and use of the highway" was prejudicially erroneous because (a) there was no evidence that Dixon was driving at an unreasonable speed and (b) the duty to drive on the right hand side should have been qualified by the words, "whenever possible" and "unless the left hand side presented a clear vision and was free of traffic for a distance of 150 feet."

In view of the way in which they elected to believe the accident happened, coupled with the physical circumstance that Dixon was rounding a curve on a rather sharp downhill grade, the jurors might reasonably have concluded that he was traveling at an excessive speed for that particular highway and location. Certainly if he was astride the center of the road and was unable to get over to his own side within a distance of at least 86 feet and in time to avoid the collision there is room for the inference that his speed was unreasonable. In Buck v. Kleinschmidt, 1939, 279 Ky. 569, 131 S.W.2d 714, another head on collision case cited by appellant, one of the instructions was specially devoted to the question of the appellant's speed and another placed upon him the duty of sounding his horn, but in condemning these two instructions this court held also that a general instruction given by the trial court, in which reasonable speed was enumerated as one of the appellant's duties, was not prejudicially erroneous. Had the trial court in the instant case given a special instruction on the question of whether Dixon had violated the statutory speed limit of 50 miles per hour the Buck case would be analogous, but we cannot say it was error, especially under the particular circumstances, to include the element of reasonable speed in the instruction enumerating his general duties.

The last point is completely untenable. According to Dixon's own testimony it *was* possible for him to keep to the right side and the left side of the road *was* obstructed, so the instruction properly omitted the condition as inapplicable.

The judgment is affirmed.