**J. B. HUMPHREY, Administrator, etc., Appellant,**

v.

**Brown J. SHARP, Appellee.**

Court of Appeals of Kentucky.

May 19, 1961.

R. J. Turley, Oscar H. Geralds, Jr., Charles M. Tackett, Mooney & Turley, Lexington, for appellant.

J. Marshall McCann, Sr., William H. McCann, McCann, Sledd & McCann, Lexington, for appellee.

MONTGOMERY, Judge.

Brown J. Sharp was sued by the estate of Eugene L. Humphrey for his alleged wrongful death in an automobile accident. The jury returned a verdict in favor of Sharp. The estate appeals. The sole question presented is whether the physical facts show so unerringly as to leave no room for a contrary determination that Sharp was driving the car instead of Humphrey.

Humphrey, Sharp, James A. Miller, and Robert A. Cathcart were members of the United States Navy stationed at Glynco Naval Air Station near Brunswick, Georgia. Upon the return from a weekend "liberty" trip to Lexington, Kentucky, Sharp's car in which they were riding overturned a short distance from Brunswick. Humphrey was thrown from the car and sustained a fatal injury.

The accident occurred shortly after 4 a. m. on Monday, July 23, 1956. The weather was dark and foggy. The hard surface highway was straight and level. It was 22 feet in width with a flat grassy shoulder 10 feet in width on each side. The car involved was a 1955 two-door Buick Century sedan with good tires and in good mechanical condition. Miller and Cathcart were asleep on the rear seat. Humphrey and Sharp occupied the front seat and had alternated in doing the driving since leaving Lexington at 2 p. m. the previous afternoon.

The county police sergeant who investigated the accident made measurements and was present at the taking of photographs. The general course of the highway was north-south. According to the ser--

geant's measurements and observations, the car, traveling south, left the highway surface on the left side, traveled 308 feet down the left shoulder, crossed the highway from left to right for 155 feet, traveled 100 feet down the right shoulder to where the car appeared to have traveled sideways on the right shoulder 59 feet 8 inches before it started rolling, and then rolled 118 feet to where it came to rest upright "sitting at about a 90 degree angle" across the surface of the highway, turned back toward the northeast. Humphrey was found unconscious about 23 feet south of the car and 3 feet over the center line in the left or northbound traffic lane. He died without recovering consciousness.

The car had overturned once. Both doors had come open and had been mashed back against the front fenders of the car. The inside of the doors was damaged. The floor mat in the front on the right side had been thrown out. The mat on the left side was still in the car. The other occupants of the car were not thrown out. Their injuries were not serious.

It is conceded that the car was operated in a negligent manner. The only material issue was the identity of the driver.

In addition to testimony of the police sergeant as to measurements, photos, and observations, appellant called appellee as if on cross-examination, and introduced a professional stunt driver who testified that in his opinion it would have been impossible for the occupant of the right front seat to have controlled the movements of his body or to have stayed in a car which traveled the course shown to have been traveled by the Sharp car, and that the driver of such car might have controlled the movement of his body by "holding onto the steering wheel" and so have stayed in the vehicle. Appellant thus argues that since Sharp and Humphrey were the only persons in the front seat and inasmuch as Humphrey was the only one thrown from the car, then Sharp, who stayed in the car must necessarily have been the driver.

Appellant points to the appearance of the highway and car, the course of travel, and various other physical facts as showing that the conclusion is inescapable that the occupant of the right front seat of the car was the one who was thrown out the right door of the car by centrifugal force and the inertia of his body at the terminal point of the skid and immediately prior to the roll-over. It is unnecessary to present further the details of appellant's ingenious argument, which was skillfully presented.

Appellee denied that he was driving the car at the time of the accident. Appellant sought to disprove the denial by an inconsistent statement. Appellee said that he had been awakened by the movement of the car off the highway and had held to the dash, thus preventing his being thrown from the car. He said he got out of the car on its right side. Miller corroborated Sharp in this statement by saying that he saw him standing at the right of the car immediately after the accident.

Miller further testified that he, Cathcart, and appellee had been asleep and that he "woke up about 4 a. m. and asked Humphrey how much further we had to go. He (Humphrey) said twenty miles." He said Humphrey was driving at that time and that he ( Miller) went back to sleep. The accident occurred about fifteen miles north of Brunswick. Cathcart did not testify.

Appellant urges that the physical facts are sufficiently strong to point unerringly to appellee as being the driver of the car, thus entitling him to a directed verdict, relying on C. L. & L. Motor Express Co. v. Achenbach, 259 Ky. 228, 82 S.W.2d 335, approved in Hoover Motor Express Co. v. Edwards, Ky., 277 S.W.2d 475, and other cases. The Court has concluded that the oral testimony of appellee and of Miller is so contrary to the physical facts evidence relied on by appellant as to require the submission of the case to the jury. Whitt v. Cato's Adm'r, Ky., 306 S.W.2d 260; Carpenter v. Galloway, Ky., 344 S.W.2d 795.

In view of the oral testimony, the trial court was correct in holding that the physical facts did not unerringly establish the identity of the driver and properly submitted the case to the jury.

Judgment affirmed.